UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

W.D., on behalf of his minor children, A. & J.; J.J., on behalf of
her minor child, R.; L.V.G., on behalf of his four minor
children; P.J. and M.O., on behalf of his minor child, A., D. and
R.J., on behalf of their minor children, S. & O.; K.K., on behalf
of her minor children M. & G.;  L.K., on behalf of his minor
child, L.; M.K. on behalf of his minor child, A.; V.L., on behalf
of her two minor children; T. and M.M., on behalf of their minor
children Y., N. & S.; K.M., on behalf of her minor children, R.
& A.; J.O., on behalf of her minor child, T.; M.P., on behalf of
his minor children, Tr., and Te.; L.P., on behalf of her minor
child, M.; M.R., on behalf of her minor children R. & E.; J.R.,
on behalf of her minor child, C. and T.T., on behalf of his minor
child, M.; Y.T., on behalf of her minor child, Y.,

Docket No. 19-cv-02066
(JCM)

Plaintiffs,

-against-

ROCKLAND COUNTY, DR. PATRICIA SCHNABEL
RUPPERT, COMMISSIONER, ROCKLAND COUNTY
DEPARTMENT OF HEALTH, and ED DAY, COUNTY
EXECUTIVE, COUNTY OF ROCKLAND, both sued in their
individual and official capacities,

**PLAINTIFFS' RESPONSE
TO DEFENDANTS'
STATEMENT OF
MATERIAL FACTS
PURSUANT TO LOCAL
RULE 56.1 AND
COUNTERSTATEMENT**

Defendants.

------------------------------------------------------------------------X

In conformance with Local Rule 56.1 and by and through their attorney, plaintiffs W.D.,

on behalf of his minor children, A. & J.; J.J., on behalf of her minor child, R.; L.V.G., on behalf

of his four minor children; P.J. and M.O., on behalf of his minor child, A., D. and R.J., on behalf

of their minor children, S. & O.; K.K., on behalf of her minor children M. & G.;  L.K., on behalf

of his minor child, L.; M.K. on behalf of his minor child, A.; V.L., on behalf of her two minor

children; T. and M.M., on behalf of their minor children Y., N. & S.; K.M., on behalf of her

minor children, R. & A.; J.O., on behalf of her minor child, T.; M.P., on behalf of his minor

children, Tr., and Te.; L.P., on behalf of her minor child, M.; M.R., on behalf of her minor

children R. & E.; J.R., on behalf of her minor child, C. and T.T., on behalf of his minor child, M.; Y.T., on behalf of her minor child, Y.,

hereby submits the following response to defendants' Statement of Material Facts and Counterstatement:

1. Each plaintiff is and at all times relevant herein was a resident of Rockland County and/or enrolled his/her/their child(ren) in the Green Meadow Waldorf School ("GMWS") or the Otto Specht School. *See* Amended Complaint [Doc. No. 35] ("Compl.") at ¶ 2; Fischer Declaration ("Fischer Decl."), Exhibit ("Ex(s).")

ADMIT.

2. Defendant County of Rockland is a municipal entity duly formed pursuant to the laws of the State of New York. *See* Fischer Decl. at ¶ 3.

ADMIT

3.    Defendant Patricia Schnabel Ruppert, D.O., M.P.H., CPE, DABFM, FAAFP (the "Commissioner") is and at all times relevant herein was the Commissioner of Health of the Rockland County Health District and the Commissioner of defendant Rockland County Department of Health ("RC DOH"). *See* Ruppert Declaration [Doc No. 24] ("Ruppert Decl.") at ¶ 1; Fischer Decl., Ex(s). 3. RC DOH employees with email extensions @co.rockland.ny.us will also be referred to herein as "RC DOH."

ADMIT.

4. Defendant Edwin J. Day is and at all times relevant herein was the Rockland County Executive. *See* Fischer Decl. at ¶ 4.

ADMIT

5. Measles is an acute viral infectious disease with widely reported health risks. The risks are especially dangerous for children. *See* Ruppert Decl. at ¶¶ 3 and 4; Fischer Decl., Ex(s). 3. *See*

*also* Blog Declaration [Doc. No. 7] ("Blog Decl.") at ¶ 4 and Blog Affidavit [Doc. No. 9-1] (Blog Aff.) at ¶ 4; Fischer Decl., Ex(s). 9.

DENY.  Measles is a now rare disease which, when more prevalent, was generally benign in its effects.  In his declaration supporting entry of a TRO in this case, Dr. Richard Moskowitz, a medical doctor for 53 years and the author of a book on vaccines, explains that the disease "almost always results in complete recovery without complications or sequellae. Deaths and major complications do occur in hypersensitive and immuno-compromised individuals, but they are exceedingly rare.  Moreover, the vast majority of children who do recover from measles have been shown to be much less prone to develop chronic, autoimmune diseases and cancer later in life than those who were merely vaccinated against it." See Exhibit 12 to Sussman Declaration for Declaration of Dr. Richard Moskowitz, para. 5.  Dr. Hendrieka Fitzpatrick, who has been a pediatrician for 33 years, also advises that in "99% of cases of measles" is a benign, 8 day illness.  "Measles", she writes, "is a benign illness with no sequellae in the USA."  She further explained, "The risk of serious illness from measles, mumps or rubella is extremely low in the USA.  The risk of any persistent complication from the measles in children is estimated between 1:10,000 and 1:500,000.  Less than 2% of children with measles develop "moderate complications," including ear infections, diarrhea and pneumonia and are "easily treated." See Exhibit 13 to Sussman Declaration for Declaration of Dr. Fitzpatrick, para. 5. According to Dr. Fitzpatrick, "These "moderate complications" are the same for EVERY viral illness of childhood." Id., para. 6. Also see COR 135 for clinical features of measles which lack the hyperbole associated with the County's position.

6. Despite these risks, some parents are concerned that vaccines could be harmful to their children or cause autism or developmental delays.  However, scientific studies have repeatedly proven the Measles, Mumps, and Rubella ("MMR") vaccine to be safe and that the benefits of

immunization far outweigh any risks.  *See* Ruppert Decl. at ¶ 5; Fischer Decl., Ex(s). 3.  *See also* Blog Decl. at ¶ 8-10; Fischer Decl., Ex(s). 9.

DENY. According to one of plaintiffs' experts, Dr. Fitzpatrick, "The risk of reported serious complications from the MMR is 1:1000." See Fitzpatrick Declaration, para. 8. Moreover, the documents provided by the County recognize the significant risk of vaccines and provide protocols to mitigate these adverse reactions. See COR 344-46,  363-69, 410-416.

7.  Moreover, *all* 50 U.S. States and D.C. require the MMR vaccine, except Iowa, which only requires the measles and rubella vaccine.  *See* Ruppert Decl. at ¶ 6; Fischer Decl., Ex(s). 3.  *See also* Blog Aff. at ¶ 3; Fischer Decl., Ex(s). 9.

DENY. Every state recognizes medical exemptions and nearly every state recognizes religious exemptions to vaccinations.  See Holland Declaration at paragraph 2.

8. Rockland County experienced a measles outbreak starting in October 2018.  This became the largest outbreak of measles in New York State since measles was declared eradicated in 2000, with the highest number of cases in NY State since 1989.  In fact, the status of an Imminent Threat to Public Health in Rockland County due to the measles outbreak was approved by the New York State Department of Health ("State DOH") Commissioner of Health on February 22, 2019.  *See* Ruppert Decl. at ¶¶ 7, 25 and 26; Fischer Decl., Ex(s). 3.  State DOH employees with email extensions @health.ny.gov will also be referred to herein as "State DOH."

ADMIT that on December 3, 2018, when defendant Ruppert violated state law and excluded children from schools despite the absence of any case of measles in their school, New York State had not declared any "imminent threat to public health in Rockland County."

9. The outbreak began in early October with the return to Rockland County of 7 unvaccinated travelers from Israel (the "Initial Cases").  *See* Ruppert Decl. at ¶ 8; Fischer Decl., Ex(s). 3; Ruppert Transcript, page 28, line(s) 11-23.

9.  DENY that any "outbreak" began in early October 2018.  In late September 2018, an Israeli came to Rockland County with three children, one of whom manifested symptoms of measles. See COR 1-11.

10.  RCDOH consulted directly with the State DOH from the beginning of the outbreak.  RC DOH's decisions in response to the outbreak were consistently made with the approval and input of State DOH.  *See, e.g.,* Emails COR0000001-11, Fischer Decl., Ex(s). 6.

DENY that this paragraph or those preceding it make reference to any "decision" by Rockland County.  In early October, Dr. Compton from the State Department of Health provided technical guidance and made suggestions with regard to how to handle family members and others who might have been exposed to the young man diagnosed with measles.

11. The Initial Cases were identified by laboratory and clinical reporting and were defined using State and Territorial Epidemiologists criteria.  Contact tracing was implemented.  Labs were sent to the State DOH Lab in Albany for laboratory diagnosis and confirmation.  *See* Ruppert Decl. at ¶ 8; Fischer Decl., Ex(s). 3.

ADMIT.  As early as October 3, 2018, Dr. Compton advised the county that for those "who are clear exposures," "we will need to consider quarantine." See COR 12, Exhibit 1 to Sussman Affirmation.  The county's first quarantine order was issued on April 16, 2019.

12.  RC DOH kept State DOH apprised of blood test results for contacts of the original infected family, who had been voluntarily quarantining.  *See* Email COR00000111, Fischer Decl., Ex(s). 6.

DENY that there is any competent evidence that anyone was engaged in a voluntary quarantine.

13. Following the Initial Cases, in coordination with State DOH, post exposure prophylaxis was instituted by RC DOH.  Isolation at home was recommended for those who had been exposed ("contacts") and lacked immunity.  *See* Ruppert Decl. at ¶ 9; Fischer Decl., Ex(s). 3.

ADMIT that quarantining was not required of anyone. "Isolation at home was recommended". Four days after it was determined that the young man with measles had been at a variety of locations with others, the County claimed that a total of 6 people were in isolation. See COR 37, Exhibit 2 to Sussman Affirmation. The county did not know whether others exposed to the disease were even aware of the "quarantine status." Id. at COR 36.

14.  In addition, multiple vaccine clinics or Points of Distribution were held to immunize those who were under vaccinated or unvaccinated.  Over 17,654 MMR vaccines were administered by private providers as well as by State and Local health departments and federally-qualified health centers in Rockland County between October 1, 2018 and April 5, 2019.  See Ruppert Decl. at ¶ 9; Fischer Decl., Ex(s). 3.

DENIED.  No proof of these activities has been provided the court and defendants' automatic disclosures in this case provide no reference to any evidence or proofs of any such activity.

15.  Community Outreach and educational efforts also were commenced and continued over the course of the outbreak.  See Ruppert Decl. at ¶ 10; Fischer Decl., Ex(s). 3.

DENIED. See Response to 14.

16.  On October 13, 2018, State DOH issued a Health Advisory regarding measles exposures in Rockland County.  See Email COR0000134, Fischer Decl., Ex(s). 6.

ADMIT, however, the State Health Advisory does not mention school attendance/enrollment in any manner.  The document also provides no specific sites where people could go and obtain vaccines or post-exposure prophylactic treatment.  Nor does the document impose any form of quarantine on anyone. See COR at 134-137.

17.  On October 14, 2018, State DOH advised RC DOH to reach out to the State DOH "cluster buster team" and to request the State to be involved in outbreak management. RC DOH did so.

DENY as stated.  On October 14 at 12:20 p.m., Rockland County Community Health Physician

and Medical Director Maria C. Mosquera wrote Dr. Compton, Dr. Ruppert and others and reported a second confirmed case of measles in the county.  In short, this was the first measles case confirmed after the October 1, 2018 report.  Remarking on the small county team, Dr. Mosquera sought unspecified help from the State Department of Health, specifically "a state call triage center" because she expected more phone calls to her office.  *See* COR at 128.  In response, an unidentified member of the State Health Department suggested that Dr. Rupert call Dr. Blog and ask for help "from the nysdoh cluster buster team."  A County of Rockland representative responded that the County had already asked for him and "they are working on something." Id. at 127.

18. On October 15, 2018, State DOH asked RCDOH to send a notification to the affected schools in accordance with its requirements. *See* Emails COR0000129, Fischer Decl., Ex(s). 6. DENY as stated.  This is plainly hearsay and its meaning unclear. Who in the State asked for what? The citation does not make this clear.

19.  On October 17, 2018, Dr. Ruppert was designated by the State DOH Commissioner of Health, under 10 NYCRR § 66-1.10, as having the authority to order schools in Rockland County to take steps to protect the students at such schools from the measles outbreak.  order school exclusions and also provided sample letters to schools. *See* Emails COR0000143-146, Fischer Decl., Ex(s). 6.  This designation was extended on November 1, 2018, December 26, 2018 and January 30, 2019. *See* Ruppert Decl. at ¶ 11; Fischer Decl., Ex(s). 3. *See also* Blog Aff. at ¶¶ 11-13.

DENY as stated. Dr. Zucker's designation was very specific and cautionary: "I hereby designate you as having authority to order schools in Rockland County, **in which there have been one or more recently confirmed cases of measles**, to take appropriate steps to protect the students within your county. These steps must take into account the Department's guidance for

controlling a measles outbreak in schools. As you are aware, the guidance the Department has provided to you describes the measures and precautions that will stop measles from spreading." See COR 144. And, the draft letter is directed to, and only to, schools which have one or more cases among their students. Id. at COR 145. Also see Exhibit 5 to Sussman Declaration at 45, ll. 11-16 & 46, ll. 16-19. All of the schools affected were religious schools in New Square. Id. at 48.

20. On October 17, 2018, State DOH provided RC DOH with sample letters to be sent to various groups regarding the measles outbreak. See Emails COR0000138-142, Fischer Decl., Ex(s). 6.

ADMIT.

21. On October 17, 2018, State DOH also provided approved letters for RC DOH to issue to schools. See Emails COR0000138-142, Fischer Decl., Ex(s). 6.

ADMIT.

22. On October 17, 2018, State DOH instructed RC DOH to begin excluding students as soon as possible. See Emails COR0000158-161, Fischer Decl., Ex(s). 6.

DENY. The authority to exclude was limited to those schools in which one or more cases of measles had been reported and the letter provided by the State so indicates. See COR 145.

23. The strategy of temporarily excluding students from school during a measles outbreak is supported by numerous scholarly articles. See Ruppert Decl. at ¶ 21; Fischer Decl., Ex(s). 6.

DENY. The authority to exclude students was limited to those schools in which one or more cases of measles had been reported. Ruppert had no additional authority and the draft letter from the state makes that clear. Id.

24. Pursuant to instructions from State DOH, on or about October 18, 2018, RC DOH began to issue temporary orders of exclusion to schools with one or more measles cases, requiring

unvaccinated and partially vaccinated children in day cares and students in schools to stay home from day care/school and receive home instruction. *See* Ruppert Decl. at ¶ 13 and Emails COR0000143-146; Fischer Decl., Ex(s). 3 and 6. *See also* Ruppert Transcript, page 45, line(s) 11-22, page 46, line(s) 16-24.

DENY except admit that, pursuant to State law, such letters were sent to, and only to, schools with confirmed cases within their student bodies, not to any other school. Id.

25.  As part of the temporary exclusion orders, students and children could not return to school or day care until 21 days after the last known case of measles. *See* Ruppert Decl. at ¶ 15 and Emails COR0000143-146; Fischer Decl., Ex(s). 3 and 6. *See also* Ruppert Transcript, page 45, line(s) 11-22, page 46, line(s) 16-24.

DENY as stated.  As the State's draft letter makes clear, the 21 day period does not relate broadly to "the last known case of measles."  It specifically is anchored to the "last exposure" in that school. Id. COR at 146.

26. The temporary exclusions orders included any student who could not document immunity, covering both students with religious exemptions and students with medical exemptions. *See also* Ruppert Transcript, page 45, line(s) 17-22.

ADMIT that to the extent the exclusion order could be issued, that is, to schools in which there was one or more cases of measles, it limited school attendance until 21 days after the last outbreak at that school for unvaccinated students, whatever the cause of that status.

27. Between October 24 and November 2, 2018, State DOH provided guidance to RC DOH regarding school exclusions would apply to Rockland County's Early Intervention Programs. *See* Emails COR0000640-645, Fischer Decl., Ex(s). 6.

DENY as stated; the issue presented was whether when the sibling of an enrollee in such a program had developed measles, other unvaccinated program attendees could be excluded. The

answer was in the affirmative and the State took the position that early intervention programs were within the compass of covered programs for the purpose of the regulations which permitted exclusion from school of unvaccinated children where that school had a case of measles.

28. RC DOH worked closely with State DOH throughout the outbreak. For example, on October 21, 2018, State DOH provided guidance to the RC DOH regarding their standing orders in connection to the measles outbreak. *See* Emails COR0000332-354, Fischer Decl., Ex(s). 6. On October 22, 2018, RC DOH sent their Standing Orders, updated with the State DOH's guidance to State DOH for review. *See* Emails COR0000356-369, Fischer Decl., Ex(s). 6. On October 24, 2018, State DOH provided feedback to RC DOH regarding their updated Standing Orders. *See* Emails COR0000397-416, Fischer Decl., Ex(s). 6. On October 25, 2018, State DOH approved RC DOH's Standing Orders. *See* Emails COR0000481-496, Fischer Decl., Ex(s). 6. *See also* Ruppert Transcript, page 60, line(s) 4 through page 61, line(s) 17.

ADMIT, but the content is immaterial to the dispute between the parties. None of these standing orders authorized the conduct about which plaintiffs complain in this matter.

29. State DOH also closely monitored and worked together with RC DOH regarding quarantining and contact tracing, as seen in emails exchanged on October 22 and October 25, 2018. *See, e.g.,* Emails COR0000355 and COR0000463-464, Fischer Decl., Ex(s). 6.

DENY to the extent that **COR 355** simply shows that someone from the State Department of Health inquired as to how many persons were currently quarantined and a representative of the County of Rockland did not know [as of October 22, 2018]. None was quarantined as the county had by then issued no such order.

30. On November 1, 2018, State DOH approved RCDOH to begin broadening the school exclusions. *See* Emails COR0000618-624, Fischer Decl., Ex(s). 6. This became part of a coordinated strategy between State DOH and RC DOH to gradually increase the number of

schools to which the exclusions applied. *See also* Ruppert Transcript, page 118, line(s) 12 through page 121, line(s) 21.

ADMIT that on November 1, 2019, the state department of health approved a "new exclusion letter." However, the approved letter is directed to schools which have **"dozens of confirmed cases in your area, with many in close geographic proximity to your school and with some cases in your actual school."** See COR 622. The last clause "and with some cases in your actual school" makes perfectly legal the letter was directed, as state law permitted, to schools with cases. However, to the extent the letter authorized more, it is baseless, as is any claim that "the law authorizes the Commissioner of the State Department of Health or his or her designee to require unvaccinated students/ children to stay home during a disease outbreak…" This is an arrogation of authority beyond "the law." Unlike prior letters, which cited the legal authority for the proposed action, Cf., COR 134, no such citation is provided here. There was no legal authority for an order allowing exclusion of children from schools ":in close geographic proximity to confirmed cases of with low vaccination rates[.]" and none is cited. This proposed letter went to the County Attorney in Rockland for review. See COR 618. The proposed letter bears a date of November 1, 2018. See COR 622.

31. Initially, a low vaccination rate was considered to be less than 70%. However, due to the failure of less restrictive means to hold back further infections and the spread of measles and after careful consideration and examination of the epidemiological evidence and consultation with the experts at the NYS DOH, Dr. Ruppert initially broadened the rate to 80% and then to 95% to achieve "herd immunity." *See* Ruppert Decl. at ¶ 14; Fischer Decl., Ex(s). 3. *See also* Ruppert Transcript, page 51, line(s) 2 through page 52, line(s) 15; page 55 line(s) 24 through page 56 line(s) 3.

DENY as stated. The statement does not identify who considered a "low vaccination rate to be less than 70%." and there is a lack of foundation for any attachment of significance to the comment. In fact, GMWS had immunization rates of less than 50% and no cases of measles in 2018 or 2019 upon the return of its children. As Dr. Moskowitz has explained, spread of the disease may be accelerated through immunizations: "there is good evidence that [contagious] diseases are being spread primarily by shedding of the live viruses from those recently vaccinated which again shows not only that the vaccine is ineffective to that extent, but that it is propagating the very diseases it was designed to prevent, and that the unvaccinated kids and their parents are unjustly taking the blame for it." See Exhibit 12 to Sussman Declaration for Moskowitz Declaration, para. 4.

32.    The reason for the required 95% rate is to establish "herd immunity." Most vaccine-preventable diseases, like measles, are spread from person to person. If one person in a community gets an infectious disease, he/she can spread it to others who are not immune. As one of the most communicable diseases known, measles is known to spread to an average of 18 people for every case. But, a person who is immune to a disease because he/she has been vaccinated cannot get that disease and cannot spread it to others. The more people who are vaccinated, the fewer opportunities a disease has to spread to others in the community. If a sufficient number of people in a community have been vaccinated against a particular virus, like measles, this is called "community immunity" or "herd immunity." "Herd immunity" protects those who cannot receive the vaccine -- e.g., infants less than 6 months of age, pregnant women and those with certain immune conditions. These groups of people are especially vulnerable to getting sick during an outbreak. See Ruppert Decl. at ¶ 16; Fischer Decl., Ex(s). 3. See also Ruppert Transcript, page 51, line(s) 2 through page 52, line(s) 15; page 55 line(s) 24 through page 56 line(s) 3.

DENY. Dr. Moskowitz explained the fallacy and lack of empirical data behind "herd immunity," noting that, regardless of the percentage vaccinated, "this [the safety posited by adherents of herd immunity] has never happened." "The present outbreaks are wholly typical of those that have occurred ever since the measles vaccine was introduced, and of those that will undoubtedly continue to occur even if 100% were vaccinated, as has been shown in China, where the government mandates the MMR with no non-medical exemption. Even with more than 99% of the population vaccinated, over 700 outbreaks were recorded in 2014 alone, with roughly 26,000 cases. Even here, the vast majority of measles and mumps cases have occurred in vaccinated individuals, often 95% or higher." See Exhibit 12 to Sussman Declaration for Moskowitz Declaration, para. 3.

33. Without "herd immunity," if one or two cases of disease are introduced into a community where most people are not vaccinated, outbreaks will occur. In 2013, for example, several measles outbreaks occurred around the country, including large outbreaks in New York City and Texas – mainly among groups with low vaccination rates. If vaccination rates dropped to low levels nationally, diseases could become as common as they were before vaccines. See Ruppert Decl. at ¶ 17; Fischer Decl., Ex(s). 3.

DENY for reasons explained in response to para. 32.

34. In furtherance of the strategy toward eventually achieving herd immunity, on November 2, 2018, RC DOH provided its school exclusion letters to State DOH for review. See Emails COR0000657-660, Fischer Decl., Ex(s). 6.

34. DENY that this was provided for review on November 2, 2018; an earlier version of the letter had been provided by State DoH on November 1, 2018 [COR 620, 622-24]; the County returned the letter to the state with certain suggestions from the County Law Department in the early afternoon of November 1. COR 618. Defendant Ruppert advised the state that she was

sending the letter out on the afternoon of November 1, 2018. Id. at 1:11.39, email from Ruppert to Ostrowski.  After she sent the letter, the State requested a copy of the final letter on County letterhead.  See COR 657.

35.  On November 1, 2018, RC DOH made arrangements to accept additional staff from State DOH as well as the Centers for Disease Control ("CDC") to work on the measles outbreak.  *See* Emails COR0000626-627, Fischer Decl., Ex(s). 6.

ADMIT

36.  On November 2 and 3, 2018, State DOH provided measles testing algorithms to RC DOH. *See* Emails COR0000646-649 and COR0000661-663, Fischer Decl., Ex(s). 6.

ADMIT.

37.  On November 5, 2018, RC DOH sent to State DOH a copy of an email that it sent to Rockland County health care provides to clarify information regarding school exclusions in schools that have not had any measles cases but were in geographic areas with close proximity to confirmed measles cases.  *See* Emails COR0000672-673, Fischer Decl., Ex(s). 6.

ADMIT, but note that GMWS was not covered by this early November 2018 directive.  Nor has the county ever identified those schools covered, but the communication from Mosquera at COR 672-73 clarifies that the outbreak remained concentrated in the Jewish communities of Monsey and Spring Valley. See COR 672 which defined the geographic areas affected by the measles outbreak as Spring Valley and Monsey. Id.

38. On November 6, 2018, State DOH provided measles testing recommendations to RC DOH. *See* Emails COR0000678-685, Fischer Decl., Ex(s). 6.

ADMIT that this document defines the "outbreak region" as New Square, Monsey, Spring Valley, New City. See COR-682

39.   On November 7, 2018, State DOH advised RCDOH that it would "determine the best available immunization coverage rate data [in schools] … [and] determine how to proceed with those schools and promptly communicate this plan of action with the county." This email is indicative of how RCDOH implemented State DOH's instructions during the outbreak. *See* Emails COR0000689-691, Fischer Decl., Ex(s). 6.

DENY.  The document shows that as of November 7, 2018, the county was using a 70% school-wide vaccination rate to determine exclusion orders. GMWS was much below that rate at the time and not included in any exclusion order.

40.   On November 8, 2018, State DOH indicated that the school exclusion list had not changed the last two days, again illustrating that State DOH was closely monitoring and collaborating with RC DOH on school exclusions.  In addition, State DOH provided RC DOH with an epi-curve, and age breakdown of Rockland measles cases.  The data indicated that the overwhelming number of cases were in children under the age of 20.  The median age of confirmed measles cases was 8 years old.  The mean age of confirmed measles cases was 14.2 years old. *See* Emails COR0000718-721, Fischer Decl., Ex(s). 6.

DENY as these numbers are not presented in the exhibit cited.  What is presented is that there had been a total of 53 measles cases in Rockland County through November 8, 2018. See COR 720, 726.  At that time, the County's population was 327,000. See Exhibit 5 to Sussman Declaration [Ruppert Deposition] at 26, l. 25-27, l. 7.  As for the remark of Dylan E. Johns, "No changes to the school exclusion list the last two days[.]," defendants have not indicated who Mr. Johns is or his area of responsibility.  Accordingly, the import of the comment is unclear

41.   On November 9, 2018, State DOH generated maps of the locations of confirmed measles cases and excluded schools through that date. *See* Emails COR0000730-734, Fischer Decl., Ex(s). 6.

15

ADMIT but note that it is not possible from the map to determine which cases remain contagious and which had come and gone with no such further risk. Accepting plaintiff's expert Tina Kimmel's testimony, which is that contagion ends less than a week after symptoms manifest, and reviewing the dates presented on COR 733, as of November 9, 2018, there may been no more than eight active/contagious measles cases in the entire county. See Exhibit 9 to Sussman Declaration [Kimmel Affidavit], para. 5. Dr. Ruppert claims the contagion period is 8 days, four days before the rash and four after. See Exhibit 5 to Sussman Declaration at 23.

42.   Between November 9 and 13, 2018, State DOH reviewed RC DOH's school exclusion letters. State DOH was intimately involved in the discussion regarding vaccination rates and school exclusions sent to schools with immunization rates lower than 70%. *See* Emails COR0000752-756 and 767-784, Fischer Decl., Ex(s). 6.

DENY. In this time period, for certain specific zip codes, exclusion orders were sent to schools with vaccination rates between 70-80%. See COR 758. The documents the county provided neither identify the schools to which letters were allegedly sent, show their purported vaccination rates or their propinquity to current contagious cases. See COR 752-787. Indeed, each letter provided the State excludes the name of the school to which it was sent. Id.

43.   On November 13, 2018, State DOH provided RC DOH with a breakdown of NYSIIS data for vaccine coverage in the zip codes of 10952, 10956 and 10977. State DOH also provided an epi-curve and age breakdown of Rockland measles cases. The data indicated that the overwhelming number of cases were in children under the age of 20. The median age of confirmed measles cases was 7.5 years old. The mean age of confirmed measles cases was 12.4 years old. *See* Emails COR0000757-766, Fischer Decl., Ex(s). 6. In addition, State DOH circulated the letter that RC DOH sent out to schools with 70-80% vaccination rates. *See id.*

DENY.  On November 13, 2018, Stephanie Ostrowski of the State Department of Health circulated the letter defendant county sent to schools with 70-80% vaccination rates the prior week. She also circulated data showing the increased number of vaccinations by zip codes since October 1, 2018. See COR 762-63. She also presented data ending on November 8 showing very few new cases in the County, fewer than twenty confirmed in the prior 12 days. See COR 764, 766.

44.  On November 14, 2018, State DOH provided five categories of exclusions for use by RC DOH in stages, noting that "the next round of exclusions would be" for schools with rates under 80%.  See Emails COR0000785-787, Fischer Decl., Ex(s). 6.

DENY as stated.  On November 13, 2018, Rockland County employee DeLuna-Evans provided a list of schools which "needed" a letter and others which did not.  Defendants have not provided that list. Upon inquiry from defendant Ruppert, Dylan Johns, a state epidemiologist, explained that certain schools in Monsey, New Square and Spring Valley were referenced by letter codes. Plainly, the few cases in the county continued to be located in these communities. See COR 785-87. The cited Exhibit does not establish that the State mandated anything with regard to these categories and, instead, references a discussion held on November 9 with County officials.  See COR 785.

45.  On November 20, 2018, RC DOH brought a potential issue facing GMWS parents to the attention of State DOH to confirm that GMWS students would not lose their religious exemptions if they elected to receive the MMR vaccination.  See Emails COR0000814-815, Fischer Decl., Ex(s). 6.  This illustrates a good faith effort on the part of RC DOH to assist GMWS parents and students during the outbreak.

DENY.  Parents with religious exemptions do not vaccinate so the inquiry was misguided to begin with.  In addition, as of November 20, 2018, GMWS had not been notified of any

requirement to exclude any child.  Finally, neither the County nor the State dispensed religious exemptions.  The school did making the proposition in defendants' statement baseless to begin with.

46.  On November 21, 2018, RC DOH and State DOH exchanged emails illustrating their ongoing collaboration regarding school exclusions.  *See* Emails COR0000816-818, Fischer Decl., Ex(s). 6.

DENY.  This exchange illustrates the hyperbole surrounding the issue.  New York State allowed both religious and medical exemptions; the county had sparse active cases despite Ruppert's claim that "the high disease burden in this community" justified running roughshod over state law and seeking 100% immunization.  Her zealousness evoked this response from Dr. Blog, "I would love to say 100%.  Not sure what the lawyers would say?"

47.  On November 28, 2018, State DOH provided guidance regarding school exclusion orders relating to schools in close geographic proximity to areas with confirmed measles cases located by State DOH's legal team.  *See* Emails COR0000909-910, Fischer Decl., Ex(s). 6.  This illustrates that RC DOH's exclusion orders were reviewed and approved by State DOH and their legal team. *See id.*

DENY.  This document merely shows that, after numerous iterations of the same letter had been disseminated to schools with the disjunctive "or" between the words, "Schools in close geographic proximity to confirmed cases, or with low vaccination rates," the State finally intervened and made clear that both these conditions had to be met to exclude students from schools with no confirmed cases.  The State suggested that the County's formulation had been "a typo," but there is no evidence supporting this.  Ruppert's response, "Would this," is not coherent.

48.  On or about December 3, 2018, State DOH notified RC DOH that GMWS, which is located in Chestnut Ridge, in zip code 10977, was to be added to the list of excluded schools because it is located near a confirmed case within the community and had a low very overall vaccination rate, which is an indicator that there is a large number of students at risk for contracting measles. According to the 2016 - 2017 NYS School Survey, GMWS's vaccination rate was 33.2%.  *See* Ruppert Decl. at ¶ 27; Fischer Decl., Ex(s). 3.  *See also* Ruppert Transcript, page 62, line(s) 4-24. DENY.  There is no evidence presented that this was a decision dictated by the State.  No email supports this assertion.  In addition, there is no evidence that, as of December 3, 2018, there was ANY confirmed case nearby.

49.  The Waldorf schools, of which GMWS is a part, are not religious based schools; rather, they have a certain educational philosophy.  *See* Compl. at ¶¶ 8-10 and Ruppert Decl. at ¶ 33; Fischer Decl., Ex(s). 1 and 3.  RC DOH was advised by GMWS's elementary school, which has 251 students, that its students had 0 medical exemptions and 110 religious exemptions.  However, RC DOH had not received copies of the exemptions and does not know whether the large number of religious exemptions (i.e., approximately 44% of the school) is based upon genuine and sincere religious beliefs, philosophical objections or any other concerns that are not a proper basis for an exemption.  *See* Ruppert Decl. at ¶ 33; Fischer Decl., Ex(s). 3.

DENY. Religious exemptions do not follow or have to follow the precepts of "organized" religions.  The religious beliefs of a parent are individual and need not derive from an organized religions to be respected.  The religious exemptions were provided by the school in good faith and reflect the beliefs of its members.  See Exhibit 3 for Plaintiff's Affidavits and Exhibit 4 for Affidavit of Maureen Satriano, para. 5.

50.  Accordingly, on December 3, 2018, RC DOH issued a letter to GMWS to temporarily exclude all unvaccinated and partially vaccinated students and to provide certain immunization

information and documents to the RC DOH on a weekly basis (the "Temporary Order of Exclusion"). *See* Ruppert Decl. at ¶ 28; Fischer Decl., Ex(s). 3. A copy of the letter was emailed to State DOH on December 15, 2018. *See* Emails COR0000919-923, Fischer Decl., Ex(s). 6. The letter explained that the school exclusion requirement was being applied based on the level of risk each school faced. This level of risk analysis included consideration whether a school is "located near a confirmed case within the community and have a low overall vaccination rate, which is an indicator that there is a large number of students/children at risk for contracting measles." *See id. See also* Ruppert Transcript, page 63, line(s) 19 through page 64, line(s) 13, page 66, line(s) 12 through page 68, line(s) 18, page 69, line(s) 6-25.

DENY. "Accordingly" has no role in this as there is no evidence that Rockland County Department of Health was ever appointed to examine the *bona fides* of the religious beliefs of those attending GMWS or any other school in the County. See COR 1063 [Ruppert queries state Health Department as to whether schools "send proof of the religious exemptions." And her staff replies that, previously, "we never required documentation of the religious exemptions."] The letter did not identify confirmed cases "in close geographic proximity" to the school, see COR 911, and, despite the high level of non-vaccination, the school had no confirmed or suspected case. See Exhibit 4 to Sussman Declaration, paras. 5, 14 & 21. Moreover, the letter to GMWS is disingenuous and claims that "As of the date of this letter, there *are* a total of 88 confirmed cases of measles in Rockland County." In fact, there "*had been*" a total of 88 cases by that date and none was in, or near, the GMWS campus.

51. On December 5, 2018, RC DOH provided an updated list of excluded schools to State DOH. *See* Emails COR0000924-927, Fischer Decl., Ex(s). 6. This list indicates that State DOH had contacted GMWS regarding their low vaccination rate that was the basis of excluding unvaccinated students from attending school. *See id.*

20

DENY.   Attached to an email from the County is a totally illegible and plainly reduced in size/scale list of schools.  The list does not indicate that the State had contacted GMWS about anything.  It also fails to provide any information about the proximity of any case of measles to the school.

52.  On January 3, 2019, RC DOH provided to State DOH for its approval an updated letter and Commissioner's Order to be issued to schools with vaccination rates below 95%.  *See* Emails COR0000983-993, Fischer Decl., Ex(s). 6.

ADMIT.

53.   The actions taken in Rockland County are consistent with the actions taken in other communities with measles outbreaks including New York City.  *See* Ruppert Decl. at ¶ 20; Fischer Decl., Ex(s). 3.

DENY.  Defendant Day acknowledged having no knowledge of any county executive issuing an emergency executive order relating to measles.  See Exhibit 11 to Sussman Declaration at 107.

54.  On January 11, 2019, State DOH provided RC DOH with an updated measles outbreak epi-curve and summary with age breakdown and other data relating to Rockland measles cases.  The data indicated that the overwhelming number of cases were in children under the age of 20.  The median age of confirmed measles cases was 6 years old.  The mean age of confirmed measles cases was 10.5 years old.  The data indicated there were 116 cases of measles in Rockland County as of January 11, 2019.  *See* Emails COR0001009-1025, Fischer Decl., Ex(s). 6.

DENY. As of that date, there were not 116 cases of measles as of January 11, 2019.  Instead, as of that date, there *had been* 116 cases of measles in more than three months.  Indeed, the data made available by the state showed 14 confirmed cases of measles between December 1, 2018 and January 11, 2019 and a radically reduced rate of cases in the county since November 12, 2018.  See COR 1011, 1026, 1028.  As of January 11, 2019, and assuming the less than seven

day contagion period attested to by plaintiff's expert, Dr. Tina Kimmel, there were at most two active cases in the entire County. Id., COR 1016, See Exhibit 9 to Sussman Declaration, para. 5. Of the 116 known cases, 19% were of persons 19 years of age or older. See COR 1030.

55. Despite these efforts, measles cases continued to increase in Rockland County, but the spread was slowed. By March 2019, there were 145 confirmed cases, 83% were individuals age 18 and under. In addition, 92.3% of the confirmed cases involved unvaccinated persons or persons with unknown or undocumented vaccination status. *See* Ruppert Decl. at ¶ 23; Fischer Decl., Ex(s). 3; Ruppert Transcript, page 43 at line(s) 3 through page 44, line(s) 6.

DENY. Defendant County has provided no basis for these numbers. Instead, as of March 12, 2019, there was *at most* ONE active case of measles in Rockland County. See COR 1061 in which the State Department of Health confirms "the most recent case in Rockland County had a rash onset date of 3/7," five days earlier.

56. The outbreak has spread throughout the geographic region of New Square, Spring Valley and Monsey (zip codes 10977 and 10952), which was considered the "Epi-Center" of the outbreak. *See* Ruppert Decl. at ¶ 24; Fischer Decl., Ex(s). 3.

DENY. As of March 18, 2019, there was at most one active case in Rockland County. The County reported that day to the State, "According to our notes the last rash onset date is 3/11 [case # 147]." COR 1077. Indeed, in the prior 11 days, the county reported two cases, one on 3/7 and one on 3/11. The following day, the same information was sent to defendant Ruppert. See COR 1079 and she acknowledged its receipt. Id. Meanwhile, Ruppert sought to have her authority extended, claiming that the outbreak was continuing in Rockland County. See COR 1082.

57. On March 8, 2019, State DOH provided an update to RC DOH regarding the current school exclusions at 15 schools and the number of measles cases, which was 145 as of that date. *See*

Emails COR0001048-1049, Fischer Decl., Ex(s). 6.   Similar updates were provided on March 12, 2019 (*see* Emails COR0001061-1062, Fischer Decl., Ex(s). 6) and March 19, 2019 (*see* Emails COR0001077-1078, Fischer Decl., Ex(s). 6).   The updates illustrate that State DOH was actively monitoring school exclusions, including those of students at GMWS.

DENY.   The number of measles cases was not 145 "as of March 8, 2019." *The total number of cases since October 1, 2018, a period of more than 5 months, was 145.*

58.   On March 21, 2019, State DOH provided RC DOH with epi-curve and age breakdown and other data relating to Rockland measles cases.   The data indicated that the overwhelming number of cases were in children under the age of 20.   The median age of confirmed measles cases was 6 years old.   The mean age of confirmed measles cases was 9.7 years old.   The data indicated two large peaks of measles in the first 50 days of the outbreak with consistent spikes of cases in the next 100 plus days.   *See* Emails COR0001093-1109, Fischer Decl., Ex(s). 6.

DENY.   On March 21, 2019, DOH data showed no "consistent spikes."   Rather the slope of reported cases was in decline beginning on January and, during the prior two months, there had been a total of 16 reported case.   See COR 1098.   According to the data the state supplied, there were at most five active cases countywide as of March 18, 2019.

59. On March 25, 2019, State DOH provided an additional update to RC DOH regarding the current school exclusions at 16 schools and the number of measles cases, which was 152 as of that date.   *See* Emails COR0001137-1138, Fischer Decl., Ex(s). 6.

DENY.   By March 25, 2019, Rockland had had a total of 152 cases or about 36 reported during the preceding 10 weeks.   Cf., COR 1016 and COR 1137.

60.   As the outbreak continued, exposures were occurring outside of the New Square, Spring Valley and Monsey (zip codes 10977 and 10952) "Epi-Center."   Exposures were occurring at shopping centers, gyms, stores, and in taxicabs.   *See* Day Transcript, page 49, line(s) 5-15.

DENY. There was never any substantiation for these claims and the data does not support it.

61. On March 26, 2019, a Local State of Emergency (the "Emergency Declaration") was declared in Rockland County. *See* Fischer Decl., Ex(s). 8. The Emergency Declaration was amended on March 28, 2019 and April 3, 2019 and rescinded on April 16, 2019. *See id.*

ADMIT.

62. The Emergency Declaration barred unvaccinated children under the age of 18 from places of Public Assembly. Infants under 6 months and individuals with medical exemptions to vaccinations were exempt from the Emergency Declaration. *See* Day Transcript, page 102, line(s) 15-18.

ADMIT; all adults, whether vaccinated or not, were also excepted from the operation of the order. See Exhibit 11 to Sussman Declaration for Day Deposition at 98-99.

63. RC DOH had no direct role in the development of this Emergency Declaration. *See* Ruppert Transcript, page 80, line(s) 3-24.

DENY. Day claims that he consulted with Ruppert about the proposed emergency order and that it reflects her wishes. See paragraphs 150-51, 158-161 and the deposition testimony cited therein.

64. On April 5, 2019, Hon. Rolf M. Thorsen, A.J.S.C. issued a Decision and Order, in an Article 78 proceeding filed by Plaintiffs, allowing the affected children to return to school.

DENY as stated. Justice Thorsen enjoined the operation of defendant Day's Emergency Order and of defendant Ruppert's school exclusion order, requiring the county to re-admit GMWS students. See Exhibit 7 to Sussman Declaration. On appeal, a Justice of the Second Department and the Second Department itself affirmed the preliminary injunction granted against operation of both orders. See Sussman Declaration, para. 3.

65. Over the course of the outbreak, temporary orders of exclusion were issued to approximately 60 schools, both secular and religious. *See* Ruppert Decl. at ¶ 19; Fischer Decl., Ex(s). 3. Many

of those temporary orders of exclusion were lifted because the schools achieved a 95%
vaccination rate. *See id. See, e.g.,* Ruppert Decl. at ¶ 30; Fischer Decl., Ex(s). 3.

DENY. The vast number of schools so affected was religious. No list of the schools has ever
been provided.

66. Over the course of the outbreak, there existed a total of 307 cases within five (5) miles of
GMWS. *See* Fischer Decl., Ex(s). 7.

DENY as to relevance. The "five mile" measure bears no relationship to anything and at the
time defendant Ruppert excluded GMWS students, she presented no information on cases in
close geographical proximity to the school. See Exhibit 9 to Sussman Declaration, para. 4.

67. On September 25, 2019, the outbreak ended. *See* Ruppert Transcript, page 137, line(s) 8;
Fischer Decl., Ex(s). 5. The outbreak ended six days before the country would have lost its
elimination status for measles, a status held since 2000. *See* Ruppert Transcript, page 151,
line(s) 21-25; page 152, line(s) 1-11; Fischer Decl., Ex(s). 5.

DENY. One case does not an outbreak make.

68. In November 2019, an event was held by the State to honor, thank and congratulate RC
DOH for their work on the outbreak. *See* Ruppert Transcript, page 152, line(s) 12-25; Fischer
Decl., Ex(s). 5. The CDC Director was present and later sent a letter of congratulations to the
Commissioner. *See* Ruppert Transcript, page 153, line(s) 1-7; Fischer Decl., Ex(s). 5.

DENY AS IRRELEVANT. If the county wanted to blame the State for its unlawful handling of
this matter, it should have implead it as a co-defendant

**PLAINTIFFS' COUNTERSTATEMENT OF MATERIAL FACTS**

1. On March 26, 2019, Rockland County Executive Ed Day issued an unprecedented Emergency
Declaration and a related local emergency order which, effective March 27, 2019, banned
unvaccinated people under the age of 18 from public places if and only if those persons were

unvaccinated due to religious exemptions.  See Exhibit 1 to Sussman Declaration. On March 28, 2019, Day issued an Amendment to Declaration of a Local State of Emergency which maintained this same classification. See Exhibit 2 to Sussman Declaration.

2. As of the dates of the challenged orders, the State of New York explicitly recognized religious exemptions, Public Health Law Title VI, section 2164 (9), and each plaintiff had obtained such exemptions for their minor children from their school. See Exhibit 3 to Sussman Declaration for Plaintiffs' Affidavits & Exhibit 4 to Sussman Declaration for Satriano Affidavit, para. 5.

3.  New York permits county public health commissioners to quarantine those suffering from a contagious disease and allows their residences to be scrubbed.  New York law also allows a public health commissioner to exclude from school children with religious exemptions from any school in which a contagious disease has been reported.  10 NYCRR section 66-2.6.

4.  Before issuing the challenged declaration and local emergency order, Rockland County officials failed to utilize the methods our state contemplated in responding to outbreaks of contagious diseases and entered no quarantine order on or against anyone. See Exhibit 5 to Sussman Declaration for Deposition of defendant Ruppert.

5.  On April 4, 2019, as petitioners and joined by others not here parties, plaintiffs initiated an action in State Supreme Court for the County of Rockland asserting that [a] defendant Day lacked authority to declare a public health emergency pursuant to Executive Law section 24 and [b] the local emergency order sought to impose measures for a thirty days time period, six times longer than contemplated by Executive Law section 24. See Exhibit 6 to Sussman Declaration for Verified Petition.

6.  Later that day, Acting Supreme Court Justice Rolf Thorsen entertained oral argument on the application for emergency relief and on April 5, 2019, the court signed the same Order to Show

Cause staying the force and effect of the Declaration and local emergency order. [1] See Exhibit 7 to Sussman Declaration for Judge Thorsen's decision.

7.   On April 11, 2019, six days later, the County of Rockland served an application to the Appellate Division for the Second Department seeking relief from Justice Thorsen's TRO.  See Exhibit 8 to Sussman Declaration for County papers.

8.   Justice Bruce Cohen entertained oral argument on the county's application and denied it on April 12, 2019, setting a briefing schedule on the application which was affirmed by the Court. See Sussman Declaration, para. 3.

9.   Plaintiffs W.D., on behalf of his minor children, A. & J.; J.J., on behalf of her minor child, R.; L.V.G., on behalf of his four minor children; P.J. and M.O., on behalf of their minor child, A.; D. and R. J., on behalf of their minor children, S. & O.; K.K., on behalf of her minor children M. & G.; L.K., on behalf of his minor child, L.; M.K. on behalf of his minor child, A.; V.L., on behalf of her two minor children; V.M. and A.M. on behalf of their minor child, L.; T. and M.M., on behalf of their minor children Y., N. & S.; K.M., on behalf of her minor children, R. and A; J.O., on behalf of her minor child, T.; M.P., on behalf of his minor children, Tr. and Te.; L.P., on behalf of her minor child, M.; M.R., on behalf of her minor children R. & E.; J.R., on behalf of her minor child, C. and T.T., on behalf of his minor child, M. and Y.T., on behalf of her minor child, Y. are all parents of children who were excluded from their school by reason of a series of shifting orders promulgated by respondent Rockland County acting through its Department of Health and Commissioner defendant Dr. Patricia Schnabel Ruppert. See Exhibit 3 to Sussman Declaration for Plaintiffs' Affidavits.

10.   These plaintiffs successfully sought injunctive relief against defendants for their arbitrary and capricious actions as set forth below. See Exhibits 6 & 7 to Sussman Declaration.

---

[1]   Supreme Court signed the same order to show cause in the separate actions.

11.  Plaintiffs W.D., on behalf of his minor children, A. & J.; J.J., on behalf of her minor child, R.; L.V.G., on behalf of his four minor children; P.J. and M.O., on behalf of their minor child, A.; D. and R. J., on behalf of their minor children, S. & O.; K.K., on behalf of her minor children M. & G.; L.K., on behalf of his minor child, L.; M.K. on behalf of his minor child, A.; V.L., on behalf of her two minor children; V.M. and A.M. on behalf of their minor child, L.; T. and M.M., on behalf of their minor children Y., N. & S.; K.M., on behalf of her minor children, R. and A; J.O., on behalf of her minor child, T.; M.P., on behalf of his minor children, Tr. and Te.; L.P., on behalf of her minor child, M.; M.R., on behalf of her minor children R. & E.; J.R., on behalf of her minor child, C. and T.T., on behalf of his minor child, M. and Y.T., on behalf of her minor child, Y. all reside in the County of Rockland or enrolled his/her/their child in the Green Meadow Waldorf School or its Otto Specht sister school [serving students with special needs] [collectively referred to hereinafter as "GMWS"] which are both located in the County of Rockland. See Exhibit 3 to Sussman Declaration for Plaintiff's Affidavits.

12.  Plaintiffs were each adversely affected as well by the emergency declaration, dated March 26, 2019, which sought to bar their unvaccinated children from any public places within the County of Rockland for a period of at least thirty days. Id.

13.  On or about March 26, 2019, acting through defendant County Executive Day, Rockland County declared a "local state of emergency" and, on that ground, entered a local emergency order which barred and prohibited each and every one of plaintiffs' identified children from being in public places, including their schools, for at least 30 days. See Exhibits 1-3 to Sussman Declaration.

14.  At the time County Executive Day declared this public health emergency, there were no more than four active cases of measles in a population of 327,000 people and no deaths or serious side effects had been reported from any case of measles. See COR 1077

15.  Likewise, when defendant Day declared this public health emergency, defendants had failed to use authority provided it by state law to quarantine those infected with measles and those living in close proximity to them. See Exhibit 11to Sussman Declaration for Day Deposition at 48.

16.  At the time defendant Day declared this public health emergency, there had been a total of less than 160 cases of measles reported during the prior six months and nearly each reported case was confined to the Orthodox/Hasidic community or arose in a person working in the home of such a family. See Exhibit 5o Sussman Declaration at 82.

17.  By and through their Article 78 proceeding, plaintiffs challenged as arbitrary, capricious and *ultra vires*/contrary to law an unprecedented "declaration of a local emergency" and the local emergency order promulgated on or about March 26, 2019 [and amended on March 28, 2019] by the County of Rockland through its County Executive, Ed Day. See Exhibit 6 to Sussman Declaration.

18.  By that declaration and the local emergency order subsumed within it, County Executive Day prohibited all persons under the age of 18 years of age who did not have at least one MMR vaccination from entering any public place for a period of at least thirty days and threatened the parents or legal guardians of such minors with six-month jail sentences or fines for its violation. See Exhibits 1 & 2 to Sussman Declaration.

19.  Before Supreme Court enjoined it, this declaration and the associated local emergency order caused plaintiffs' children to be denied attendance at nursery programs and schools and effectively prohibited their movement and denied them the right to congregate and assemble in public places. See Exhibit 3 to Sussman Declaration.

20.  Before entry of this unauthorized edict, acting through defendant Ruppert, defendant County of Rockland barred non-vaccinated students from schools in several zip-codes, including nursery

programs and schools which had no known case of measles. That action also lacked authorization in state law or regulation and the injunction plaintiffs sought and received from Rockland County Supreme Court enjoined implementation of that order and allowed their children back into school because state law did not provide any basis for their continued exclusion. See Exhibits 7 and 8 to Sussman Declaration.

21. Supreme Court determined that the declaration and local emergency order should be enjoined because plaintiffs showed a substantial likelihood of success on the merits, i.e., their claim that defendants lacked authority to issue such these orders, and that their enforcement would create irreparable harm and that the balance of equities favored plaintiffs. See Exhibit 7 to Sussman Declaration.

22. Executive Law § 24 permits a County Executive to declare a public emergency "in the event of a *disaster, rioting, catastrophe, or similar public emergency* within the territorial limits of any county, city, town or village, or in the event of reasonable apprehension of immediate danger thereof, and upon a finding by the chief executive thereof that the public safety is imperiled thereby."

23. This state law also allows for the entry, filing and publication of local emergency orders intended to implement measures to quell the *disaster, catastrophe, rioting or other similar event*. Such orders may be issued for a period of up to five days or shorter, if the condition which caused their issuance no longer justified their implementation. Id.

24. If a County Executive wishes to extend a local emergency order beyond five days, s/he must do so in a manner proscribed by Executive Law section 24 and then only for a period of an additional five days at any one time. Id.

25. New York State law provides means and measures for dealing with an outbreak of the measles and other contagious diseases, specifically authorizing both the exclusion of non-

vaccinated students from a school in which a case of measles has been reported and/or the quarantining of a person/place infected by a contagious disease.

26.   County Executive Day's declaration included a broad local emergency order which purported to last for thirty days, far in excess of that permitted by law for such an order.

27.   The local emergency order restricted each plaintiff and their children in their activities, travel and daily routines.  See Exhibit 3 to Sussman Declaration.

28. Each plaintiff then had a religious exemption for his/her child(ren).  Id.

29. County Executive Day's local emergency order impermissibly extinguished the force and effect of lawful religious exemptions which were then recognized by the State of New York.

30.  Before Justice Thorsen enjoined them, the school exclusions required by Day's order were implemented outside of the only two zip codes in which cases of measles have been reported.

31.   Indeed, Day's local emergency order operated county-wide and barred children under the age of 18 who are unvaccinated or whose vaccine-induced immunity was no longer protective from places of public assembly, including schools and nursery school programs, synagogues, churches, malls, libraries and parks for thirty days.  See Exhibits 1 & 2 to Sussman Declaration.

32.  County Executive Day's local emergency order did not cover unvaccinated persons over the age of 18.  Id.

33.   At oral argument before Judge Thorsen, County Attorney Humbach explained that the County Executive did not want to restrict the ability of those unvaccinated and over 18 years of age from earning a living and supporting their families.  See Sussman Declaration, para. 4.

34. During the 2018-19 school year, plaintiffs' minor children attended GMWS in Chestnut Ridge, New York, a private, non-sectarian school.  See Exhibit 3 to Sussman Declaration.

36. GMWS offers and implements an entirely unique pedagogy premised on the teachings of Rudolf Steiner. See Exhibit 6 to Sussman Affirmation.

37. During the 2018-19 school year, GMWS educated approximately 300 children in grades nursery-12 at a single campus in Chestnut Ridge. Waldorf schools exist throughout the world and the United States. Amongst the distinctive features of the schools are their small class sizes, the assignment of a single main lesson teacher to a class between first and eighth grades and the offering of a very broad curriculum which includes substantial emphasis on the development of the whole child, as opposed to an emphasis on rote learning verified by standardized testing. Id.

38. Each plaintiff chose to enroll his/her children in GMWS because of its distinctive and unique educational philosophy and pedagogy and its respect for their deeply held religious beliefs, including their religiously-based opposition to vaccination for reasons set forth in accompanying Affidavits. See Exhibit 3 to Sussman Declaration.

39. Pursuant to the laws and regulations established by the State of New York, each plaintiff applied for and received religiously-based exemptions from vaccinations from GMWS. These religious exemptions were valid and effective during the 2018-19 school year and allowed plaintiffs' minor children to attend school without vaccinations, including the MMR vaccination, which is the only available vaccination covering measles. See Satriano Affidavit.

40. At the commencement of the 2018-19 school year, approximately half of the students attending GMWS were not vaccinated for measles. Id.

41. During the months of September, October and November 2018, not a single case of measles was reported at the GMWS school or in the Threefold Community which surrounds it. Id.

42. On October 18, 2018, after the reporting of several cases of measles in Rockland County, defendant County, acting through its Department of Health, issued an order requiring unvaccinated students to be excluded from any school in which a case of measles had been reported. See Exhibit 1 to Exhibit 4 to Sussman Declaration [Satriano Affidavit].

43. This order referenced the state regulation which authorized defendants to so act where a case of measles was reported in a specific school. Id.

44. The first reported cases of measles were restricted to the Hasidic population, which lives in self-segregated areas of Rockland County, specifically New Square and Monsey/Spring Valley. See Exhibit 5 to Sussman Declaration at 28-30.

45. Defendants supported this exclusion order by reference to Title 10 NYCRR section 66-2.6, which authorized exclusion of non-vaccinated students from, and only from, a school which experiences an outbreak of measles. Ibid. The only schools covered by the October order were religious schools in New Square. See Exhibit 5 to Sussman Declaration at 48, ll. 2-8.

46. As no case of measles had been reported by that date amongst its students, GMWS was not within the reach or scope of this initial exclusion order, and plaintiffs' children continued to attend school at GMWS. See Exhibit 1 to Exhibit 4 to Sussman Declaration [Satriano Affidavit].

47. At no time after October 18, 2018 was there any reported case of measles amongst students attending the GMWS or enrolled in GMWS. Id.

48. As of the date this first exclusion order was issued, Ruppert had not discussed with Day the idea of quarantining anyone with the measles. See Exhibit 5 to Sussman Affirmation at 50, ll. 1-12.

49. As of this date, Ruppert had not issued any quarantine order, though she was aware she had that authority. Id. ll. 7-16.

50. On October 22, 2018, the New York State Department of Health sent GMWS a letter which reaffirmed, in relevant part, respondent's directive as follows, "For schools that **DO NOT** have a positive measles case, the schools should **NOT** exclude students who are unvaccinated [i.e., those that have a valid religious or medical exemption]." [emphases in original]. See Exhibit 2 to Exhibit 4 to Sussman Declaration [Satriano Affidavit].

51. The New York State Department of Health further directed schools **which reported at least one case of measles** to exclude unvaccinated students for 21 days "after the last date of exposure". Id.

52. This language mirrored the substance of the County's October 18, 2018 exclusion order and was compliant with state law. See Title 10 NYCRR section 66-2.6.

53. Between October 18 and December 3, 2018, defendants received no report of any case of measles amongst the students or families of students attending GMWS or within the broader Threefold Community which is proximate to the school. See Exhibit 4 to Sussman Declaration for Satriano Affidavit, para. 15 ["our school .. had no cases of measles"]..

54. Between October 18, 2018 and April 16, 2019, defendants did not order a quarantine of those persons infected with measles or those in direct contact with those so infected. See Exhibit 11 a 72-73. County Public Health workers admitted this to Satriano, the Green Meadow nurse. See Exhibit 4 to Sussman Affirmation, para. 15 [comment by Tatiana de Luna-Evans from County Health Department that county told people to stay home but did not police them because it allegedly could not do so.)

55. Between October 18 and December 7, 2018, plaintiffs' children continued to attend GMWS and none contracted the measles. See Exhibit 4 to Sussman Declaration for Satriano Affidavit.

56. Regardless of this fact and the language of the operative regulation, on December 3, 2018, acting through defendant Ruppert, defendant County extended the school exclusion order to GMWS on the ground that the school is located "near a confirmed case within the community and ha[s] a low overall vaccination rate, which is an indicator that there is a large number of students/children at risk for contracting measles." See Exhibit 3 annexed to Satriano Affidavit which is Exhibit 4 to Sussman Declaration.

57. The same letter stated, "In an effort to minimize exclusions, while simultaneously controlling the outbreak, exclusions in this category are being made in schools and day cares with the lowest vaccination rates. Schools and day cares that are currently subject to exclusion requirements in this category will remain subject to such requirements for 21 days from the date your school or day care exclusions were required to be begin [sic]." Id.

58.  The same letter commanded GMWS to exclude unvaccinated children "until 21 days after the last case of measles is identified within your school…or in close geographic proximity to your school…" Id.  Said letter did not define "close geographic proximity." Id.

59.  At the time defendants implemented this new policy, no new case of measles had been reported outside of the Orthodox/Hasidic Jewish community or amongst those having direct contact with a member of an infected family.  See COR

60.  Plaintiffs' public health experts opined that defendants irrationally defined "close proximity" as within the same zip code, an area exceeding 11 square miles. See Exhibit 11 to Sussman Declaration for Affidavit of Tina Kimmel, para. 4.

61.  This definition bore no reasonable relationship to the area of contagion for the measles and was entirely overbroad and arbitrary. Id.

62.  By dint of the December order, defendants excluded students from GMWS even though there was no reported case of measles in the school or the broader Waldorf community and even though the referenced zip code encompassed a very large area, inclusive, eleven [11] square miles, and included insular populations [with some incidence of measles] with whom students attending GMWS had, and were likely to have, no contact and, certainly, no contact while at GMWS which enrolls no students from the Hasidic community.  See Exhibit 4 to Sussman Declaration for Affidavit of Maureen Satriano, R.N., para. 11..

35

63.  After December 7, 2018, defendants continued to make no effective effort to limit or restrict the movement of those with, or likely directly exposed to, measles. See Exhibit 11 to Sussman Declaration for Day Deposition at 72-73.  Defendants failed to quarantine affected persons even though state law specifically authorized them to do so until April 16, 2019. Id.  Indeed, to the date this lawsuit was filed, defendants did not impose any restriction or quarantine specifically against those with measles or those living with them.  Id.

63A.  On or about December 5, 2018, defendant county's agents advised GMWS that if the school attained an immunization rate of 80%, it would then vacate the exclusion order and allow it to re-admit all its students. See Exhibit 4 to Sussman Declaration for Satriano Affidavit at para. 7.

64.  On December 7, 2018, the GMWS complied with defendant Ruppert's edict and excluded all non-vaccinated children from its pre-k through12 school for twenty one days.  See Exhibit 4 to Sussman Declaration, para. 8.

65.  On December 21, 2018, weeks after the exclusion order was initially applied to the GMWS, defendant Ruppert altered her prior order, now advising GMWS that, "the School Exclusion order will be lifted when your school reaches an immunization rate for MMR vaccine of 95%." See Exhibit 4 to Sussman Declaration for Exhibit 5 to Satriano Affidavit.

66.  In the same letter, Commissioner Ruppert wrote, "I appreciate your continued cooperation as I remain committed to raise immunization rates in Rockland County." Id.

67.  An immunization rate of 95% is wholly incompatible with the number of families attending GMWS with *bona fide* and recognized religious exemptions to immunization, and its implementation effectively excluded large numbers of children from continuing with their educations at GMWS regardless of the fact that the school's enrollees had not experienced a

single instance of measles during the 2018-19 school year. See Exhibit 4 to Sussman Declaration, para. 8 noting exclusion of one-half of Green Meadow students.

68. In light of the dearth of other proximate Waldorf schools outside the affected zip codes, such an exclusion order effectively and substantially limited the educational choices available for parents like plaintiffs committed to educating their children at a Waldorf school. See Exhibit 3 to Sussman Affirmation for plaintiffs' Affidavits so attesting.

69. During the month following the December 21, 2018 letter, cases of measles continued to be reported within isolated areas of GMWS's zip code. See Exhibit 4 to Sussman Declaration, para. 17.

70. On February 7, 2019, defendant Ruppert advised GMWS that it could not re-admit excluded, non-vaccinated students until 42 days after the last reported case of measles in Rockland County. Defendants since repudiated this order and never committed the same to writing. See Exhibit 4 to Sussman Declaration, para. 23.

71. Again reversing course, on February 7, 2019, defendant advised GMWS' nurse that it was abandoning the "zip code" as a frame of reference and stated that the school exclusion order would apply to GMWS as long as any active case of measles existed within Rockland County. Id.

72. By dint of the February 7 directive and the broad language of the March 26 declaration, without Supreme Court's intervention, plaintiffs' children would have remained excluded from school through at least April 25, 2019 and perhaps longer depending on factors totally outside of their control.

74. Assuming the efficacy of the MMR vaccination, excluding non-vaccinated children from GMWS is not necessary to protect vaccinated classmates. Each plaintiff agreed to accept the risk

of their child contracting measles through school attendance at a school which has no reported case of measles. See Exhibit 4 to Sussman Declaration, para. 21.

75.  Through the outbreak in 2018-19, defendants never specifically quarantined those who have been exposed to measles or have measles and such persons may walk on streets, attend movies, go to supermarkets or otherwise have contact with the general population, allowing the transmission of the disease.  See Exhibit 5 [Ruppert] at and Exhibit 11 [Day] at   .

76.  Defendant's stated motivation was to increase vaccination rates in Rockland County, eviscerating the religious exemption then sanctioned by state law for those like plaintiffs who had demonstrated sincerely-held religious beliefs and obtained religious exemptions from vaccination. See Exhibit 9 to Sussman Declaration for Kimmel Affidavit, para. 9.

77.  Without any form of due process, defendants' cited orders summarily excluded from GMWS numerous children whose parents, plaintiffs and other similarly-situated persons, sought and attained from their school a *bona fide* religious exemption from the use of vaccinations.

78.  Defendants' school exclusion orders damaged plaintiffs in the following ways: [a] their children's education and social relationships have been substantially disrupted; [b] defendants trammeled their intimate, constitutionally protected life choices, including the right to exercise their *bona fide* religious beliefs and their right to choose a private school which reflects their values and beliefs; [c] their patterns of daily life, including their work and child care schedules, have been substantially disrupted, often with significant psychological and financial costs; and [d] they left petitioners with substantial uncertainty due to the shifting nature of defendant's edicts and when, if ever, they shall be permitted to return their children to the school of their choice. See Exhibit 3 to Sussman Declaration.

79. The exclusion order was irrational in that the use of the "zip code" as a proxy for an area of contagion had no medical or scientific basis and works an overbroad imposition upon plaintiffs

and their children and the later use of the whole county as a reference for school exclusion is even less supportable and more irrational. See Exhibit 9 to Sussman Declaration for Kimmel Affidavit, para. 4.

81. That the exclusion order is irrational is best demonstrated by its deviation from prior orders: a 42-day exclusion is twice what respondent initially implemented and lacks scientific or medical justification. See Exhibit 9 to Sussman Declaration for Kimmel Affidavit, para. 5.

82.   Allowing children back into school immediately upon receiving an MMR vaccination contravenes directives of the CDC, see Exhibit 12 to Sussman Declaration for Moskowitz Declaration, para. 4., and the prior communication from the respondent itself which required even children who received one vaccination to remain home for 21 days after "exposure."

83.   Justice Thorsen's entry of a TRO effectively ended defendant Day's challenged executive order.  Justice Thorsen ruled on Friday, April 5. The County did not file a notice of appeal to the Appellate Division until April 12, 2019, a week later.  See Sussman Affirmation, para. 3.

84.  If the underlying circumstances were tantamount to a "catastrophe, rioting or a disaster," the County would have been compelled to move much more quickly to implement steps of the sort described in Executive Law section 24.

85.  But, the outbreak was not similar to such an emergency and did not warrant entry of an order pursuant to Executive Law section 24.

86.   Rather, the 2018-19 outbreak of measles may be understood as follows: starting in late September 2018 and through April 2019, a period of seven months, there were approximately 160 cases of measles reported in a county of 350,000 people.

87.   The disease has not been "fast spreading," the cardinal quality of an epidemic, and the prevalence of vaccinated people in the County make impossible the conversion of this outbreak into an epidemic.

88. Accordingly, Supreme Court correctly determined that petitioners/respondents were likely to succeed on their claim that the County Executive over-stepped his authority when he issued the Declaration of Emergency and the subsumed local emergency order.

89. As defendant Day ended his own order on April 16, 2019, he mooted more conclusive legal determination of its illegality.

90. The terms of the executive order were plainly unlawful. Executive Law section 24 allows a County Executive to issue an emergency order for a period of five days. However, Day's order included a thirty day duration, expiring on April 25, 2019. The duration of this emergency order plainly contravenes the statute upon which the County Executive proceeded. .

91. The County Executive's local emergency order which purports to hold all unvaccinated children under the age of 18 in their homes but for those with medical exemptions was a profoundly irrational way of proceeding which contravened New York State law.

92. By dint of this order, children were disallowed from attending their schools even where, as here, their schools had no reported cases of measles. This conflicts with both the state law allowing children with religious exemptions to attend school and the regulation which allows children with such exemptions to be excluded from their schools only after a case of measles is reported in their specific school.

93. In the cases covered by defendant Day's order, as well as defendant Ruppert's prior exclusion orders, the County simply flaunted the state's legal edifice and punished those who are unvaccinated.

94. While implementing orders without legal authority, the County has utterly failed and refused to implement those measures which the State of New York authorized in the case of an outbreak of a contagious illness, specifically, quarantining those affected and disallowing students from attending school if and only if there is an outbreak of a contagious disease in that child's school.

40

It is utterly irrational to NOT implement measures set forth in law and then to implement much more draconian measures aimed at an uninfected population.

95.   In enjoining these ultra vires orders, Supreme Court also found that children excluded from school, from church, mosque or synagogue, from public assembly for a month are irreparably harmed.

96.   While a defendant in this case, Day never read the Amended Complaint or the Answer filed in his name. See Exhibit 11 to Sussman Declaration at 13.

97.   In October 2018, Ruppert told Day there was an outbreak of measles, but he could not remember anything else about their discussion, including the number of reported cases. Id. at 17.

98.   Day could recall no specific discussion that month with anyone else about the measles outbreak. Id. at 18.

99.   At the time, Day had informational meetings with key staff members twice each week, but his health commissioner did not attend these meetings. Id. at 18-19.

100.  Despite the alleged measles outbreak, she attended no such meeting in October 2018. Id. at 19.

101.  In October, none of his key staff people provided Day any guidance on how to deal with the "outbreak." Id. at 19-20.

102.  At the time, Day had no familiarity with New York Public Health Law relating to the outbreak of a contagious disease in the state. Id. at 20.  For example, he did not know that if a school had a case of a contagious disease, unvaccinated students could be excluded. Id. at 29. He initially claimed to have believed [erroneously] in October 2018 that "children were being told to stay home if they were not vaccinated whether or not there was a case in their school" Id. at 30.  Then advised that his statement did not reflect county policy in October 2018, Day

stated that the county excluded students then from schools with known cases of the measles. Id. at 32-33.

103.  He recalls no briefing from Ruppert in October 2018 and had no memory of the number of active cases reported. Id. at 20, 22.

104.  Day had no recollection of conversations with anyone in October 2018 about quarantining anyone with or exposed to measles. Id. at 22-23.

105.  Day claims that he communicated with Ruppert by email in October 2018, but the County has produced few such emails. Id. at 24, Declaration at para. 5.

106.  Day directed Ruppert to develop an action plan, but could not recall seeing any such plan in October or November 2018. Id. at 24.  Ruppert denied that Day asked her for any such plan. Id. at 57, l. 25-58, l. 16.

107.  Day claimed that "this entire matter was being handled by the Health Department because this was a health issue…pretty much the things that occurred here were under the auspices of the Health Department." Id. at 33.

108.  Ruppert never explained to Day how the Health Department confirmed an active case at a school. Id. at 34.

109. Day claims not have known when Green Meadow children were excluded from school. Id. at 34-35.

110. He did not hear of any exposure to measles in the GMWS community between mid October and early December 2018. Id. at 36.

111.  Day had no contact with State Health Commissioner Howard Zucker, the Governor or any of the governor's political people  in October 2018 about the outbreak. Id. at 37.

112. Day was not familiar with the letter excluding plaintiffs' children from school dated December 3, 2018. Id. at 39.

113. Ruppert told Day she wanted to establish certain benchmark immunization rates, but he could not recall the conversations. Id. at 43-44.

114. Day had no knowledge of whether Rockland County issued any quarantine order through the end of 2018. Id. at 45-46.

115. Ruppert told Day that "quarantining was highly ineffective." Id. at 46. "It was illogical" because you did not know who to quarantine, according to Day. Id. at 46-47.

116. When asked whether he and Ruppert discussed quarantining those they knew did have the measles, Day claimed that did not. Id. at 47.

117. Ruppert did not tell Day that it was ineffective to quarantine those who had been diagnosed with the measles. Id. at 48.

118. Day never issued an order quarantining those with measles. Id. at 48.

119. While he claimed that people with measles had been told by their old doctors to stay home, Day had no idea whether they were generally complying with this guidance or not. Id.

120. Day did not know whether, by the end of 2018, measles cases had developed outside of the initial "epicenter" which he had defined as Spring Valley and Monsey. Id. at 21, 49.

121. As of January 18, 2019, Rockland County had had 116 confirmed cases of measles, but Day had no idea how many were then active. Id. at 56.

122. In March 2019, Day issued his emergency order based upon information he was getting from Dr. Ruppert and health professionals. Id. at 50.

123. The prohibitory language in Day's Executive Order was drafted by the county's law and health departments at Day's request. Id. at 61.

124. Before issuing this order, Day kept no running count of active measles cases, Id. at 51, and had no idea how many cases there were. Id. at 62.

125.  He did not know whether he had learned of any case outside the original epicenter. Id. at 52.

126.  He claimed not to know the number of active cases at the time he signed the order  Id. at 62-63.

127.  Before March 2019, Day had issued one executive order which lasted for a few hours and related to a snow storm. Id. at 52-53.

128.  Day claims he issued the executive order because Ruppert told him that the holiday season of Easter and Passover were approaching and that there might be a spike in cases.  Id. at 64.

129.  Day claims that after he court enjoined his emergency order, Dr. Ruppert told him there was a 30% increase in outbreaks. Id. at 66, 68.

130.  No information provided by the county supports this assertion.

131.  Day himself did not know whether the number of active cases went from 3 to 4 or from 30 to 40.  Id. at 67.

132.  About fifteen minutes before announcing the order, Day spoke with one person from the State of NY at her initiative about it. Id. at 69-70.

133.  Other than this call, Day had no contact with anyone from the state about his order. Id. at 71.

134  After Supreme Court enjoined his emergency order, Day issued a mandate that anyone <u>with measles</u> stay home. Id. at 72-73.

135.  This order stated that all students in two zip codes, Spring Valley and Monsey who were not vaccinated needed to stay home from school. Id. at 74.

136.  Later in April, Day and Ruppert advocated the end of religious exemptions to vaccinations in New York. Id. at 78-79.

137.  They lobbied local state legislators to support repeal of the religious exemptions. Id. at 79.

138.  Day publicly claimed that the religious exemption was being abused. Id. at 80.

139.  At the time he made these statements, Day had no idea whether any case of measles had been spread in Rockland County by an unvaccinated child with a religious exemption. Id. at 81.

140.  Day knew that the original measles cases in Rockland involved unvaccinated adults. Id. at 82-83.

141.  Day had no idea what percentage of adults in the Hasidic community was unvaccinated. Id. at 83.

142.  In late April 2019, Day characterized those who supported the religious exemption as "loud, very vocal and very ignorant. Id. at 83-84.

143.  Day could not name a single "anti-vaxxer." Id. at 85.

144.  Day had no knowledge of the vaccine court. Id. at 86-88.

145.  In April 2019, Day stated, "There's no such thing as a religious exception.  The bottom line here is that in addition to the fear factor, we have, we have babies in ICU's.  We've had a baby born with measles.  When are we going to wake up and say, "you know something, let's do the right thing here…" Id. at 89.

146.  In April 2019, a few days after Judge Thorsen enjoined Day's emergency order, he wrote in Facebook, "We aren't going to quarantine people…" Id. at 91.

147.  On April 12, 2019, Day wrote, "Unfortunately, the anti-vax movement, which relies on inaccurate science and dangerous misinformation, inserted itself into something that only health and government officials should be allowed to determine." Id. at 92.

148.  Dr. Ruppert told Day that people who claim that measles may be spread through shedding are speaking "nonsense."Id. at 95-96.

149.  Day's emergency executive  order only focused on children with religious exemptions because he had to balance the fact that if "we told everybody to stay home, we'd have a

significant impact upon families as far as going out to make a living, shopping, going to school, working." Id. at 98.

150.   Day conversed with Ruppert concerning the content of the emergency executive and discussed who should be included.  Id. at 99.

151.  They chose not to include unvaccinated adults. Id. at 99.

152.  Day had no idea how many unvaccinated adults lived in the county.  Id. at 99.

153.  Day did not include children with medical exemptions to vaccinations upon Dr. Ruppert's advice. Id. at 100-01.

154.  Day had no idea whether there were more such children in the county or more children with religious exemptions. Id. at 101.

155.  Day claimed that his order was intended to protect those with medical exemptions, "the ones with the medical exemptions were the ones we were trying to protect by having everyone else immunized." Id. at 102.

156.  Those with medical exemptions had, Day believed, a better reason for their exemptions than those with religious exemptions. Id. at 102.

157  Despite Judge Thorsen's decision, Day insisted seven months later that his emergency order could remain in effect for 30 days. Id. at 100.

158.  Day claimed not to have relied on any opinion from the county's legal department in issuing the emergency executive order. Id. at 105.

159.  In issuing this order, "it was more relying on the Health Department." Id. at 105.

160.  In issuing his executive order, Day believed he was :acting upon the founded powers of the Health Commissioner.  The Order was designed to be further supportive of what she was doing." Id. at 106.

161.  Day testified with respect to the emergency executive order, "We adopted what they [the Health Department] wanted to do into that document." Id. at 111.  "…there was inclusion of the Health Department's wishes in there." Id. at 112,  "We basically adopted what the commissioner wanted to do and put the force of an emergency declaration." Id. at 112.

162.  When he issued his emergency executive order, Day was unaware of any other county executive so acting. Id. at 107.

163.  Day had no idea of the economic impact of the school exclusion orders Ruppert issued. Id at 108.

164.  Day had no idea how long plaintiffs' children were excluded from school. Id.

165.  Dr. Ruppert is a D.O. who received her degree in 1989. See Exhibit 5 to Sussman Declaration at 9.  She received her M.P.H. in 2015. Id. at 9-10.  She is board certified in family medicine and licensed in NY State. Id. at 10.  She worked as a hospitalist at Helen Hayes between 2007-13. Id at 11.

166.  Ruppert did not recall emailing with Day concerning measles; she recalled phone calls and in person meetings. Id. at 13.

167.  Ruppert was not sure whether she and Day met as many as two times concerning measles in 2018. Id. at 14.

168.  Ruppert has complete confidence that the Center for Communicable Diseases records showing the number of such diseases in Rockland County is accurate. Id. at 14-15.

169.  A small number of cases may not have been reported to the county. Id. at 21, ll. 9-16.

170.  Students in schools have contacts with a myriad of adults. Id. at 27.

171.  The County health department maintained no information as to the vaccination status of adults working in schools with children. Id. at 28.

172.   Between October 2018 and may 2019, the county health department never obtained any data from schools reflecting the vaccination status of adults working therein. Id. at 28.

173.   Ruppert has no knowledge of how many adults in the Hasidic community of New Square were unvaccinated. Id. at 32-33.

174.   Ruppert had no knowledge of how many of the adults teaching children in the Yeshivas were vaccinated. Id. at 34.

175.   After learning of at least three cases of measles, sufficient to constitute an "outbreak" to her, Ruppert reported this matter to John Lyon, an aide to the county executive. Id. at 35-36.

176.   By her own account of her activity through calendar 2018, Ruppert did not issue any quarantine order to anyone. Id. at 39, l.14-42, l.13.

177.   At deposition, Ruppert claimed the county had 181 confirmed measles cases through 2018. Id. at 42.  This is at substantial variance with the data otherwise provided during discovery and with the allegedly undisputed statements of facts defendants now submit. See Statement 54 which claims that the county had 116 cases of measles by January 11, 2019.

178.   Of the cases in the county through 2018, one or two were outside the Hasidic community. See Exhibit 5 to Sussman Declaration at 42-43.

179.   On or about November 1, 2018, Ruppert claims she sent orders of exclusion of unimmunized students in schools whose vaccination rates were under 70%. Id. at 51.

180.   There was no scientific basis for the 70% figure and Ruppert conceded that. Id. at 52-53.

181.   At the time GMWS had an immunization rate of under 50%.  See Exhibit 4 to Sussman Declaration at para. 5 [GMWS immunization rate was under 50%].

182.   GMWS did not receive the 11/1/ 18 exclusion order. Id., para 7.

183.   Ruppert could not identify any non-religious school covered by the 70% exclusion order. See Exhibit 5 to Sussman Declaration at 55, ll. 12-18.

184.  Ruppert claimed that 8 days later she entered another order, excluding non-vaccinated students from schools with a less than 80% vaccination percentage. Id. at 56.

185.  Ruppert could not identify any non-religious schools covered by this order. Id. at 56, ll. 4-11.

186. By mid-November, all reported measles cases were in the Hasidic communities in New Square, Monsey or Spring Valley. Id. at 56-57.

187. On December 3, 2018, Ruppert issued an exclusion order to one school, GMWS. Id. at 62.

188. This was the first contact between Ruppert and that school. Id. at 62, l. 20-53, l. 3.

189.  Before December 3, Ruppert claims not to have known of the vaccination rate at the GMWS. Id. at 63-64.

190. At the time she sent the exclusion order to GMWS, Ruppert knew that there were no cases of measles among the school's students. Id. at 65, ll. 9-12.

191. At the time she sent the letter, Ruppert knew that there were a large number of students at the school who had religious exemptions. Id. at 66.

192.  She testified falsely, "They had religious exemptions, and we honored them." Id. at 67.

193.  She testified that her exclusion order required those with religious exemptions to leave school until 21 days "after the last case of measles in the region, the geographic area." Id. at 66-67.

194. The definition of "geographic area" was zip code. Id. at 68.

195. For GMWS, two zip codes controlled and these zip codes included the Hasidic communities where the measles cases were found.  Id. at 68-69.

196. Despite the presence of specific regulations explaining the Commissioner's authority to exclude students in the case of a contagious disease, that is, from a school where such a case has been diagnosed, Ruppert claimed that she had authority to mitigate any communicable disease

and that this authority extends to exclude from school unvaccinated children with religious exemptions even where there is no case in their school. Id. at 71-72.

197.   Ruppert claims there was one case of measles near GMWS "but not on the school grounds." Id. at 74.

198.   Ruppert could not answer how close to the school this case was found. Id. at 75.

199.   She believed the infected person was Hasidic. Id.

200.   Ruppert claimed that the school exclusion lasted through the end of the school year. Id.

201.   Ruppert then recalled that the students from GMWS were permitted to return to school by court order. Id. at 76.

202.   Despite Day's claim that he conferred with her about the parameters and content of his executive order, Ruppert claimed that she had "no direct role" in its development. Id. at 80.

203.   She claims he "utilized information that I had provided all along during the outbreak. That may have had a part." Id. at 80.

204.   When asked whether she knew the order was being issued, this emergency order on the issue she had been working on for months, Ruppert claims she was "out of town on vacation." Id. at 80.

205.   Before she left for her vacation, she "knew that he was formulating something" but not the details. Id.

206.   Ruppert admitted that in January and February, the number of reported measles cases had declined. Id. at 82.

207.   She claimed the number rose in March, but that only one or two cases was outside the Hasidic communities. Id. at 82.

208.   Ruppert knew that the county played no role in approving religious exemptions to vaccinations. Id. at 83.

209.  She knew such exemptions were legislatively created in New York. Id.

210.  In the spring 2019, Ruppert went to Albany with Day and Lyon to speak with the media and lobby in favor of repealing religious exemptions to vaccinations. Id. at 87.

211.  When asked whether she had formed any conclusions about where those who contracted measles got I from, Ruppert stated, "It became difficult after the initial group because we had so many cases, reported and otherwise." Id. at 90.

212.  Ruppert did not know the fatality rate among infants aged 4-12 months in the study she cited in her Affidavit previously filed in this matter.  Id. at 92 and Exhibit 14 to Sussman Declaration.

213.  Ruppert supports mandatory vaccination in an outbreak, a position contrary to the laws of the state of New York in 2018-19.  Id. at 94-95.

214.  Herd immunity for measles is established at 95% according to Ruppert. Id. at 95.

215.  This means that if 5% of the population is not vaccinated herd immunity still obtains.  Id. at 95-96.

216.  In 2018-19, voluntary quarantining was "not effective enough as we continued to have cases and needed to control the outbreak."  Id. at 97.

217.  Ruppert denied reporting to Ed Day that quarantining was ineffective. Id. at 97-98.

218.  Rupert acknowledged that Rockland County was not quarantining during the outbreak. Id. at 98.

219.  The New York State Department of Health never told Ruppert NOT to quarantine.  Id. at 98.

220.  By November, when she was issuing exclusion orders for children whose schools did not show any case of measles, Ruppert had had no discussions with her staff concerning the use of quarantining of measles cases. Id. at 102.

221. The 70% and 80% heard immunity numbers Ruppert used in November 2018 did not come from the CDC. Id. at 103.

222. By the time this case was filed, GMWS was the only non-religious school still covered by an exclusion order. Id. at 105.

223. As of March 8, 2019, a date she advised the court the county had 145 confirmed cases of measles, Ruppert knew that "a small number" were active or contagious. Id. at 106-07.

224. Ruppert knew that it was not her role as Commissioner of Health to determine whether those with religious exemptions held as genuine and sincere religious belief. Id. at 110-11.

225. When asked whether the State Department of Health defined "close geographic proximity" for the purpose of determining whether she could order students excluded from a school where no cases of measles had been reported, Ruppert could not reference any specific guidance or definition she received from the DoH. Id. at 119-121.

226. The Chestnut Ridge Middle School is in close geographic proximity to the GMWS, but it had no cases of measles and had a high vaccination rate. Id. at 123-24.

227. Ruppert could not identify any religious school in close geographic proximity to GHWS in any direction. Id. at 124.

228. As of March 8, 2019, Ruppert cannot remember having any conversation with Day about quarantining in Rockland County. Id. at 128.

229. Ruppert claims that her authority to exclude unvaccinated students with religious exemptions GMWS from school derived from two sources: three letters from Dr. Zucker [written in November, December and January] and Public Health Law section 2100. Id. at 133.

230. On or about April 16, 2019, the County of Rockland issued a quarantine order which mandated that anyone with measles or those exposed to measles stay out of public spaces throughout the county. Id. at 134.

52

231.  The quarantine order included a provisions directing all unvaccinated students in zip codes 10952 and 10977 to remain out of school, but it made exceptions for students who had medical or religious exemptions. Id. at 141-42.  Rupert explained, "We were honoring medical and religious exemptions." Id. at 142.

232.  The County issued this order because, in April 2019, there were more reported cases of measles than in any prior month. Id. at 140-41.  This represented a policy change for the county, adding an additional control measure that we had not been able to perform before." Id. at 148.

233.  To implement the quarantine order, staff from the county's Health Department identified those exposed to measles through contact tracing related to each confirmed case and informed those so exposed of the mandate. Id.

234.  Ruppert claimed that her small staff had been unable to do complete contact tracing before this time period. Id. at 148-49.

235.  In April 2019, CDC evaluated the county, found the department of health "woefully understaffed" and sent additional staff. Id. at 149.

236.  Ruppert claims to have realized she had a staff shortage in April 2019. Id. at 160-61.

237.  The Department commenced contact tracing early in the outbreak and Ruppert advised Day that her agency was so proceeding. Id. at 135-36.

238.  Ruppert found the quarantine order effective in limiting the spread of measles. Id. at 137.

239.  Ruppert cannot recall giving Day any briefing on "anti-vaxxers" or a specific conversation with him about that subject. Id. at 139.

240.  Ruppert could not recall how many students with religious exemptions contracted measles in 2018-19. Id. at 145.

241.  Ruppert could not recall whether anyone contracted measles from a student with a religious exemption.  Id. at 146.

Respectfully submitted,

MICHAEL H. SUSSMAN [3497]


SUSSMAN & ASSOCIATES
PO BOX 1005
GOSHEN, NEW YORK 10924
(845)-294-3991

Counsel for Plaintiffs