UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
W.D., on behalf of his minor children, A. & J.; J.J., on behalf of her minor child, R.; L.V.G., on behalf of his four minor children; P.J. and M.O., on behalf of his minor child, A., D. and R.J., on behalf of their minor children, S. & O.; K.K., on behalf of her minor children M. & G.; L.K., on behalf of his minor child, L.; M.K. on behalf of his minor child, A.; V.L., on behalf of her two minor children; T. and M.M., on behalf of their minor children Y., N. & S.; K.M., on behalf of her minor children, R. & A.; J.O., on behalf of her minor child, T.; M.P., on behalf of his minor children, Tr., and Te.; L.P., on behalf of her minor child, M.; M.R., on behalf of her minor children R. & E.; J.R., on behalf of her minor child, C. and T.T., on behalf of his minor child, M.; Y.T., on behalf of her minor child, Y.,

Docket No. 19-cv-02066 (JCM)

Plaintiffs,

-against-

ROCKLAND COUNTY, DR. PATRICIA SCHNABLE RUPPERT, COMMISSIONER, ROCKLAND COUNTY DEPARTMENT OF HEALTH, and ED DAY, COUNTY EXECUTIVE, COUNTY OF ROCKLAND, both sued in their individual and official capacities,

Defendants.
------------------------------------------------------------------------X

**REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

THOMAS E. HUMBACH
County Attorney
By: Patrick Fischer
Senior Assistant County Attorney
11 New Hempstead Road
New City, New York 10956
(845) 638-5146
fischepa@co.rockland.ny.us

Defendants respectfully submit this reply memorandum of law in further support of their motion for summary judgment ("Motion") pursuant to F.R.C.P. 56.

At the outset, Defendants note that Plaintiffs' Memorandum of Law in Opposition [Doc No. 83] provides that the Commissioner's Letter is not the basis of Plaintiffs' second, third or fourth causes of action. (*See* pp. 13, 20, 22).[1] Moreover, those causes of action are based on school exclusions that were in effect months before the Emergency Declaration was issued by the Rockland County Executive, and upon which it had no impact. Plaintiffs therefore suffered no damages based on the Emergency Declaration, and Defendants' motion with regard to the second, third and fourth causes of action must be granted in its entirety without further analysis. Nonetheless, below is Defendants' reply to the Opposition.

## POINT I: DEFENDANTS DID NOT VIOLATE PLAINTIFFS' PROCEDURAL DUE PROCESS

Defendants' Memorandum of Law in Support ("MOL") [Doc. No. 81] argues: (1) Plaintiffs received all of the process they were due by bringing an Article 78 petition; (2) even in the absence of a post-deprivational hearing, a pre-deprivational hearing is not required in an emergency health situation; and (3) a religious exemption to vaccinations is not a fundamental right. Plaintiffs fail to refute these points, and summary judgment must be granted in Defendants' favor.

With regard to the first point, Defendants' MOL lists numerous cases showing that an Article 78 proceeding was an appropriate post-deprivational remedy herein. Plaintiffs attempt to distinguish a few of these cases but fail to provide even a single case to refute Defendants' position. Defendants' Motion as to Point I must be granted.

---

[1] Defendants note that Plaintiffs' Amended Complaint did not make clear that Claims II through IV did not relate to the actions of Dr. Ruppert and the Rockland County Department of Health. Defendants did their best to discern the Amended Complaint and resultingly discussed the Commissioner's Letter at length in their MOL. Plaintiffs' Opposition clarified Plaintiffs' claims, and this Reply responds to the Opposition accordingly.

1

With regard to the second point, neither a pre-deprivational nor a post-deprivational hearing was required in this emergency situation. This is clear from New York State's handling of the coronavirus pandemic and mandating the closure of schools without any hearings. A public health crisis wherein people are threatened by a potentially deadly disease or virus like the coronavirus or the measles is clearly an emergency. Protection of the public health and safety is "[o]ne of the oldest examples" of permissible summary action. *Ewing v. Mytinger & Casselberry, Inc.*, 339 U.S. 594, 599 (1950).

In *Hodel v. Va. Surface Mining & Reclamation Ass'n*, 452 U.S. 264, 299-300 (1981), the Supreme Court upheld the constitutionality of an emergency procedure which allowed the Secretary of the Interior, acting through government inspectors, to order the immediate cessation of mining activities when an inspector perceived an immediate danger to public safety. The Court in *Hodel* stressed the importance of according deference to the government's emergency procedures. Such action "responds to situations in which swift action is necessary to protect the public health and safety. This is precisely the type of emergency situation in which this Court has found summary administrative action justified." *Hodel*, at 301 (citing *Ewing*).

The essence of an emergency is the need for swift action. In *Catanzaro v. Weiden*, 188 F.3d 56 (2d Cir. 1999), a car crashed into a building causing serious structural damage. The city thus ordered the building demolished and did not afford the building owner an opportunity to be heard. In holding that the city did not violate due process, the Court stated that it should "not [] engage in a hindsight analysis of whether the damage to the buildings actually created an immediate danger to the public. Under *Hodel*, the due process guarantee is offended only when an emergency procedure is invoked in an abusive and arbitrary manner … ." *Id.* at 62 (citing *Hodel*, at 302-303). The Court, at 188 F.3d at 63, went on to say:

> We do not mean to suggest that the government may simply avoid affording due process to citizens by arbitrarily invoking emergency procedures; *Hodel* clearly declares such actions unconstitutional. However, where there is competent evidence allowing the official to reasonably believe that an emergency does in fact exist, or that affording predeprivation process would be otherwise impractical, the discretionary invocation of an emergency procedure results in a constitutional violation only where such invocation is arbitrary or amounts to an abuse of discretion. … This somewhat deferential standard finds strong support in policy considerations. The law should not discourage officials from taking prompt action to insure the public safety. By subjecting a decision to invoke an emergency procedure to an exacting hindsight analysis, where every mistake, even if made in good faith, becomes a constitutional violation, we encourage delay and thereby potentially increase the public's exposure to dangerous conditions. This quandary is exactly what these emergency procedures are designed to prevent, and is the primary reason they are constitutionally acceptable.

Plaintiffs' contention that there was no emergency is patently wrong. Measles is an extremely infectious disease, far more infectious than the coronavirus. As shown by the March 21, 2019 State DOH with epi-curve and age breakdown, the overwhelming number of cases were in children under the age of 20. *See* Emails COR0001093-1109, Fischer Decl., Ex(s). 6. The median age of confirmed measles cases was 6 years old. *Id*. The mean age of confirmed measles cases was 9.7 years old. *Id*. The data indicated two large peaks of measles in the first 50 days of the outbreak with consistent spikes of cases in the next 100 plus days. *Id*. Furthermore, by March 25, 2019, State DOH reported that Rockland County had 152 measles cases. *See* Emails COR0001137-1138, Fischer Decl., Ex(s). 6. School children were the most at risk. Requiring a pre-deprivational hearing would have had unvaccinated students coming to school, potentially exposing themselves while the legal process played out. This is the equivalent of closing the barn doors after the horses ran out.

Lastly, a §1983 constitutional claim will not lie "where the state provides a post-deprivation remedy adequate to meet the due process requirements of the Constitution." *Vialez v. New York City Housing Authority*, 783 F. Supp. 109, 113 (S.D.N.Y. 1991).

To challenge Defendants' third point that a religious exemption is not a fundamental right, Plaintiffs cite *Goss v. Lopez*, 419 U.S. 565 (1975). Such reliance is improper. *Goss* involved students being suspended from school for misconduct without any formal hearing process. Nowhere does *Goss* say that education is a fundamental right. The Court's discussion is not about the power of the state in a public health emergency, but rather how unsubstantiated misconduct charges could harm students. *See id.* at 575. The *Goss* opinion simply mandates a fundamentally fair hearing process before a student could be suspended from school. *See id.* at 574.

Plaintiffs contend that *Jacobson v. Massachusetts*, 197 U.S. 11 (1905), is not applicable here because it involved a local law requiring mandatory vaccination. This limited view of *Jacobson* ignores its progeny. *Jacobson*'s principles relating to the inherent police power of government to combat threats to the public health have been and continue to be cited as leading authority in cases outside *Jacobson*'s fact pattern, including in the context of Emergency Orders intended to combat the ongoing COVID-19 pandemic.

The Western District of New York recently cited *Jacobson* in denying a request to enjoin the Mayor of Rochester's Emergency Order to prevent the spread of COVID-19, which restricted gatherings of more than four persons outdoors and more than nine persons indoors between 11:00 p.m. and 5:00 a.m. *See Martin v. Warren*, No. 20-cv-6538 (CJS), 2020 U.S. Dist. LEXIS 154979 (W.D.N.Y. August 26, 2020). In so ruling, the Court stated that the COVID-19 situation in the city was "sufficiently serious to warrant the invocation of *Jacobson*." *Id.* at 52.

The Southern District of New York also recently cited *Jacobson* in denying a request to enjoin the Mayor of New York City's Executive Order prohibiting all public gatherings of any size. *See Geller v. De Blasio*, No. 20-cv-3566 (DLC), 2020 U.S. Dist. LEXIS 87405 (S.D.N.Y. May 18, 2020). In so ruling, the Court stated that the order must be viewed through the "lens" of

4

*Jacobson*, which held that "a community has the right to protect itself against an epidemic of disease which threatens its members." *Id.* at 7 (quoting *Jacobson*, at 27). The *Geller* Court further observed that, pursuant to *Jacobson*, in the face of such an epidemic, judicial scrutiny should be reserved for a regulation that "'has no real or substantial relation to' the object of protecting 'the public health, the public morals, or the public safety,' or is 'beyond all question, a plain, palpable invasion of rights secured by the fundamental law,'" and that "a 'court would usurp the functions of another branch of government if it adjudged, as matter of law, that the mode adopted under the sanction of the state, to protect the people at large was arbitrary, and not justified by the necessities of the case.'" *Geller,* at 7-8 (quoting *Jacobson*, at 27-28, 31).

The Supreme Court recently cited *Jacobson* in denying a request to enjoin the Governor of California's Executive Order limiting attendance at places of worship to 25% of building capacity or a maximum of 100 attendees. *See S. Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613 (2020). In so ruling, the Court stated that a State's response to a public health emergency "is a dynamic and fact-intensive matter subject to reasonable disagreement. Our Constitution principally entrusts '[t]he safety and the health of the people' to the politically accountable officials of the States 'to guard and protect.'" *Id.* at 1613 (quoting *Jacobson*, at 38).

Plaintiffs also argue that *Phillips v. City of New York*, 775 F.3d 538 (2d Cir. 2015), is not applicable here because that case involved the exclusion of unvaccinated students from a school with an outbreak of chicken pox. In *Phillips*, one student at a school had chicken pox and the unvaccinated at that school were excluded as a result. Here, while GMWS did not have any measles cases, the surrounding community had dozens, and unvaccinated students were at high risk of contracting and spreading the measles. *Phillips* shows that excluding children with a religious exemption from school is a constitutional response to a public health emergency.

## POINT II: THE ORDER DID NOT TARGET SINCERELY HELD RELIGIOUS BELIEFS AND DID NOT SUBSTANTIALLY BURDEN FIRST AMENDMENT RIGHTS

The Amended Complaint at ¶¶ 82 and 84 states that the Emergency Declaration violates the First Amendment by precluding Plaintiffs from continuing "to send their unvaccinated children [with religious exemptions] to **school** … ." The claim and Plaintiffs' alleged damages therefore relate to their inability to attend school. As already explained, the Emergency Declaration issued by the County Executive had no impact upon Plaintiffs' school attendance. Plaintiffs have entirely failed to refute this point, and summary judgment must be granted for Defendants.

Even if the Emergency Declaration did impact school attendance (which it clearly did not) for the ten days when it was in effect, it was facially neutral, of general applicability, and narrowly tailored. The Emergency Declaration applied to children who were able to be vaccinated and had the biggest risk of contracting and spreading the measles. It permitted individuals under the age of 18 who received one or more MMR dose to utilize taxi or livery vehicles or private residences, or to attend medical treatments. *See* Fischer Decl., Ex(s) 8. Individuals who had not received a single dose of MMR were free to communicate and express themselves in any means other than a large, in-person gathering of more than 10 persons in a public place, as defined in the Emergency Declaration. They were free to assemble publicly in small groups, assemble privately, and could communicate with any number of people over the phone or over videoconference.

In addition, as illustrated in the MOL, the Emergency Declaration was issued pursuant to a sufficient compelling interest: health. *Martin v. Warren*, *Geller v. De Blasio* and *S. Bay United Pentecostal Church v. Newsom* discussed above, demonstrate that the Court should not substitute its judgment for the County Executive's.

Plaintiffs allege that the Emergency Declaration was aimed at children who had religious exemptions to vaccination. However, religious exemptions only apply in a school setting, and

6

Plaintiffs had already been excluded from school by the Commissioner's Letter. The Emergency Declaration applied throughout Rockland County, beyond schools, and beyond Plaintiffs. Plaintiffs' argument that children with school-based religious exemptions were targeted is absurd.

Plaintiffs outrageously claim that the Emergency Declaration was motivated by hostility toward religion and cite the County Executive as stating that the religious exemption has been abused and used as a personal preference exemption. Even if any such statement were accurate, it would show that the County Executive disagrees with using the religious exemption for <u>non-religious purposes</u>, not that he is hostile toward religion. Plaintiffs' arguments are illogical. The Opposition's arguments that religious discrimination is wrong are therefore a red herring to distract from the fact that the County Executive never spoke or acted in any way against religion. Defendants therefore refrain from correcting Plaintiffs' misstatements of fact regarding Point II, as "[d]isputes over irrelevant facts must not be allowed to obscure the lack of a material dispute." *Burlington Coat Factory Warehouse Corp. v. Esprit de Corp.*, 769 F.2d 919, 923 (2d Cir. 1985).

Furthermore, *F.F. v. State of NY*, 114 N.Y.S.3d 852 (Alb. Sup. Ct 2019), analyzed the repeal of the religious exemption. The Court cautioned that guessing the motives of political leaders was hazardous. "That is why 'isolated remarks are entitled to little or no weight[.']" *Id.* at 866 (quoting *Murphy v. Empire of America, FSA*, 746 F2d 931, 935 (2d Cir 1984)). In upholding the repeal of the religious exemption as constitutional, the Court held that "the overall history and context of New York's vaccination law, the series of events leading up to the repeal of the religious exemption, and the legislative history of the repeal, all lead to the inexorable conclusion that the repeal was driven by public health concerns, not religious animus." *F.F.*, at 863.

Moreover, Plaintiffs attached such statements taken from multiple sources, such as newspaper articles and a Facebook post, to the Opposition. A motion for summary judgment must

7

be opposed by evidentiary materials listed in F.R.C.P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1985). The Court may consider pleadings, depositions, answers to interrogatories, admissions and affidavits in deciding a summary judgment motion. F.R.C. P. 56(c). The materials submitted by Plaintiffs do not fall within those categories and should not be considered by the Court. Likewise, pursuant to Local Rule 56.1(d), statements in Plaintiffs' Response to Defendants' Statement of Material Facts Pursuant to Local Rule 56.1 [Doc. No. 84] lacking a citation to admissible evidence as defined by F.R.C.P. 56(c) should also be disregarded by the Court.

### POINT III: DEFENDANTS DID NOT VIOLATE EQUAL PROTECTION

Plaintiffs have failed to cite a single case to refute this point. As in response to Point II, Plaintiffs wrongfully assign a fictional motivation underlying the Emergency Declaration with no supporting facts or law. The County Executive never made negative remarks toward religion or those who were religious, and the Amended Complaint and Opposition mischaracterize his statements. In addition, as already expressed, the Emergency Declaration had no impact upon Plaintiffs' school attendance, and summary judgment must be granted for Defendants.

Moreover, "restrictions on particular social activities … during [a public health crisis] is a dynamic and fact-intensive matter subject to reasonable disagreement." *S. Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613, 1613 (2020). In the context of a public health emergency, disagreement with a particular course of action or evaluating the benefits of alternatives with the benefit of hindsight does not mean that the government action was unconstitutional. "While it is no secret that reasonable minds can and do differ over what defensive measures might be most effective and desirable, there is little room for debate in this forum. *Jacobson* instructs that it is 'no part of the function of a court' to determine which measures are 'likely to be the most effective for the protection of the public against disease.'" *Luke's Catering Serv. v. Cuomo*, 2020 U.S. Dist. LEXIS 165907, *39-40 (quoting *Jacobson*, 197 U.S. at 30).

The Emergency Declaration did not have a discriminatory purpose. It was formulated based on data. *See* Day Transcript, page 98, line(s) 12-13; Fischer Decl., Ex(s). 4. "When faced with a society-threatening epidemic, state officials are empowered to implement emergency protective measures that infringe federal constitutional rights. They may generally do so at their sole discretion and for so long as is necessary." *Luke's Catering Serv. v. Cuomo*, No. 20-cv-1086S, 2020 U.S. Dist. LEXIS 165907, at *2 (W.D.N.Y. Sept. 10, 2020). Policy considerations regarding adults needing to work protecting individuals with medical exemptions were also considered, which "bear some real or substantial relation to the threatening epidemic and are not unquestionably a plain invasion of rights," and as such, "the efficacy and wisdom of those measures are not subject to judicial second-guessing." *Id.* The Public Health Law now requires all students other than those with medical exemptions to receive mandatory vaccinations. *See F.F.*

## POINT IV: DEFENDANTS DID NOT VIOLATE FREEDOM OF ASSEMBLY

As with Point III, Plaintiffs have failed to list even a single case to refute this point. Likewise, as noted above, the religious exemption only applies to the school setting. Unvaccinated children with religious exemptions to vaccinations had been excluded from school months before the Emergency Declaration was issued, and the Emergency Declaration therefore had no impact upon Plaintiffs' exclusion from school. At all times herein, there is, and was, no religious exemption to public assembly. The Opposition argues that the Emergency Declaration limited public assembly because of "Day's abhorrence of religious exemptions" (*see* Opposition, at pp. 22), but the Emergency Declaration does not discuss religion in any way.

"[C]ourts have long held that the constitutional right to assembly—like the right to free speech—is not absolute." *Amato v. Elicker*, No. 20-cv-464, 2020 U.S. Dist. LEXIS 87758, at *26-27 (D. Conn. May 19, 2020) (citing *Papineau v. Parmley*, 465 F.3d 46, 56 (2d Cir. 2006)). "That is especially true in the context of an epidemic." *Leb. Valley Auto Racing Corp. v. Cuomo*, No.

20-cv-804, 2020 U.S. Dist. LEXIS 143223, at *9 (N.D.N.Y. Aug. 11, 2020) (citing *Jacobson*). *Jacobson* has been cited by courts denying freedom-of-assembly challenges to state authority during the COVID-19 pandemic. *See Tigges v. Northam*, No. 20-cv-410, 2020 U.S. Dist. LEXIS 131592, at *22-24 (E.D. Va. July 21, 2020) (no likelihood of success on the merits in freedom-of-assembly challenge to Virginia executive order limiting attendees at gatherings); *Legacy Church, Inc. v. Kunkel*, No. 20-cv-327, 2020 U.S. Dist. LEXIS 122542, at *362, *372, *380, *385 (D.N.M. July 13, 2020) (unsuccessful freedom-of-assembly challenge to a number of New Mexico executive orders impacting religious gatherings). Rockland County's measles outbreak constituted the sort of public health crisis or "epidemic of disease which threatens the safety of [a community's] members" contemplated by *Jacobson*, 197 U.S. at 27. In accordance with *Jacobson*, Defendants' actions had a "real and substantial relation" to curbing the spread of the measles.

Even without *Jacobson*, the Emergency Declaration was lawful as a reasonable time, place, or manner restriction. *See Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). As demonstrated under point II, above, the Emergency Declaration was content neutral. It was "narrowly tailored to serve a significant governmental interest, and [it] leave[s] open ample alternative channels for communication." *Id* (internal quotation marks and citations omitted). Thus, even under a standard First Amendment analysis, Defendants' actions did not restrict Plaintiffs' right to publicly assemble without legal authority or compelling reason.

**POINT V: DAMAGES ARE NOT AVAILABLE FOR PLAINTIFFS' ALLEGED HARM**

As noted in *V.D.*, any harm caused by the children's exclusion from school was a result of Plaintiffs' own decision not to vaccinate their children. Any factual difference with *V.D* does not bar its application. Moreover, no damages for school exclusions are available under the Emergency Declaration because they were effected by the Commissioner's Letter months earlier. The Emergency Declaration was only in effect March 27 through April 5, 2019.

## CONCLUSION

For all of the reasons set forth above, it is respectfully requested that the Court grant an Order granting summary judgment as a matter of law in favor of the Defendants and dismissing Plaintiffs' Complaint with prejudice in its entirety and for such other relief as the Court may deem appropriate under the circumstances herein.

Dated: September 14, 2020
New City, New York

       THOMAS E. HUMBACH
       County Attorney
       *Attorneys for Defendants*
       11 New Hempstead Road
       New City, New York 10956
       (845) 638-5180

By: */s/Patrick Fischer*
    PATRICK FISCHER
    Senior Assistant County Attorney
    fischepa@co.rockland.ny.us