21-551-cv
*M.A. v. Rockland County Department of Health*

# In the

# United States Court of Appeals

## For the Second Circuit

August Term, 2021

No. 21-551

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: Nov 09 2022

M.A., on behalf of his minor children, H.R. & M., M.C., on behalf of her minor child, R.J., W.D., on behalf of his minor children, A. & J., N.D., on behalf of her minor children, L.M. & P., E.E., J., on behalf of their minor children, A. & S., J.J., on behalf of her minor child R., L.V.G., on behalf of his four minor children, P.J., on behalf of his minor child A., D. on behalf of their minor children, S. & O., R.J. on behalf of their minor children S. & O., K.K., on behalf of her minor children M. & G., L.K. on behalf of his minor child L., M.K., on behalf of his minor child, A., V.L., on behalf of their two minor children, V.M., on behalf of their minor child, I., A.M., on behalf of their minor child, I., T. on behalf of their minor children Y., N. & S., M.M., on behalf of their minor children Y., N. & S., K.M.M., on behalf of their minor children, S., K. & L., W.M., on behalf of their minor children, S., K. & L., K.M., on behalf of their minor children, R. & A., J.O., on behalf of her minor child, T., M.P., on behalf of his minor children, TR. & TE., L.P., on behalf of her minor child, M., M.R., on behalf of her minor children, R. & E., J.R., T.T., on behalf of his minor child, M., Y.T., on behalf of her minor child, Y., J.E., M.O.,

*Plaintiffs-Appellants,*

v.

ROCKLAND COUNTY DEPARTMENT OF HEALTH, DR. PATRICIA SCHNABEL RUPPERT, in her official capacity as Commissioner and in her individual capacity,

1

CERTIFIED COPY ISSUED ON 11/09/2022

ROCKLAND COUNTY, ED DAY, in his official capacity as County Executive and in his individual capacity,[1]

*Defendants-Appellees.*

---

Appeal from the United States District Court
for the Southern District of New York
No. 19-cv-2066

(Argued: June 14, 2022; Decided: November 9, 2022)

Before:        POOLER, PARK, and LEE, *Circuit Judges*.

Plaintiffs-Appellants, who are the parents of minor children enrolled in the Green Meadow Waldorf School or the Otto Specht School and are residents of Rockland County, New York, bring this action against the Rockland County Department of Health and several Rockland County officials asserting various claims, including a violation of the Free Exercise Clause of the First Amendment, based on orders which excluded children who were not vaccinated against measles from attending school and an emergency declaration which barred unvaccinated children, other than those with medical exemptions, from places of public assembly.

Defendants subsequently moved for summary judgment, and the district court granted their motion in full.  We disagree with the district court's dismissal of Plaintiffs' Free Exercise claim because this claim raises numerous factual disputes—including whether there is evidence of religious animus, to whom the emergency declaration applied, and what the County's purpose was in enacting the declaration—that prevent Defendants from prevailing on summary judgment.

---

[1] The Clerk of the Court is respectfully directed to amend the official caption to conform to the above.

For the reasons explained below, we **VACATE** in part as to the grant of summary judgment on the Free Exercise claim, **REVERSE** the district court's dismissal of Plaintiffs' claims, and **REMAND** for trial on the Free Exercise claim and for consideration of whether partial summary judgment for the Defendants is warranted on the remaining claims.

Judge Park concurs in a separate opinion.

———————————————————

MICHAEL H. SUSSMAN, Sussman & Associates, Goshen, New York, *for Plaintiffs-Appellants*.

LARRAINE FEIDEN, Principal Assistant County Attorney (Patrick John Fischer, Principal Assistant County Attorney, *on the brief*), *for* Thomas E. Humbach, County Attorney, County of Rockland Department of Law, New City, New York, *for Defendants-Appellees*.

———————————————————

EUNICE C. LEE, *Circuit Judge*:

Plaintiffs-Appellants, who are the parents of minor children enrolled in the Green Meadow Waldorf School or the Otto Specht School and are residents of Rockland County, New York, bring this action against the Rockland County Department of Health and several Rockland County officials asserting various claims, including a violation of the Free Exercise Clause of the First Amendment,

3

based on orders which excluded children who were not vaccinated against measles from attending school and an emergency declaration which barred unvaccinated children, other than those with medical exemptions, from places of public assembly.

Defendants subsequently moved for summary judgment, and the district court granted their motion in full. We disagree with the district court's dismissal of Plaintiffs' Free Exercise claim because this claim raises numerous factual disputes—including whether there is evidence of religious animus, to whom the emergency declaration applied, and what the County's purpose was in enacting the declaration—that prevent Defendants from prevailing on summary judgment.

For the reasons explained below, we **VACATE** in part as to the grant of summary judgment on the Free Exercise claim, **REVERSE** the district court's dismissal of Plaintiffs' claims, and **REMAND** for trial on the Free Exercise claim and for consideration of whether partial summary judgment for the Defendants is warranted on the remaining claims.

## BACKGROUND

Beginning in October 2018, Rockland County experienced a measles outbreak—the largest outbreak in New York since measles was declared

4

eradicated in 2000. The Rockland County Department of Health ("RC DOH"), including Defendant-Appellee Patricia Schnabel Ruppert, the Commissioner of Health of the Rockland County Health District, coordinated with the New York State Department of Health ("NY DOH") to identify cases and implement contact tracing methods. Isolation at home was recommended for those who had been exposed and lacked immunity. However, cases began to spread.

That same month, RC DOH began to issue temporary orders of exclusion to schools with one or more measles case, requiring that unvaccinated and partially vaccinated children stay home. After cases continued to rise, NY DOH and RC DOH broadened their school exclusion orders on November 1, 2018, to reach schools without infected students, but with low vaccination rates, if those schools were in close geographic proximity to the areas with the highest concentration of confirmed cases. The NY DOH identified two zip codes with the highest concentrations of confirmed cases, which cover approximately eleven square miles and primarily contain Hasidic Jewish communities. At first, a low vaccination rate was considered under 70%, but since less restrictive means did not quell the outbreak, Ruppert upped the low vaccination rate designation to 80% and then 95%.

On December 3, 2018, RC DOH ordered the Green Meadow Waldorf School and its sister school, the Otto Specht School (collectively, "GMWS"), to exclude all non-vaccinated students for twenty-one days because it was in one of the identified zip codes and its vaccination rate was only about one-third of students ("First Exclusion Order").  Prior to the start of the measles outbreak, all of Plaintiffs' children had previously received religious exemptions to vaccination, including for measles, from GMWS.[2]  However, the First Exclusion Order and the subsequent exclusion orders provided no religious or medical exemptions.  By December 21, 2018, 105 cases had been reported in Rockland County, up from forty-five in late October,[3] and RC DOH issued another order informing GMWS that if it reached the threshold of 95% vaccinated, then RC DOH would lift the current exclusion order ("Second Exclusion Order").  RC DOH sent additional exclusion orders to other schools with vaccination rates under 95% on January 3, 2019.

_____

[2] Approximately forty-four percent of GMWS's elementary school population had religious exemptions to vaccination.  However, GMWS is not a religious-based school.

[3] *New York State Measles Watch*, N.Y. St. Dep't Health, https://nyshc.health.ny.gov/web/nyapd/measles-watch.

On January 30, 2019, RC DOH found that GMWS high school had achieved a 95% vaccination rate for students under eighteen and lifted the high school's exclusion order. However, on February 7, 2019, GMWS was informed that as long as any active case of measles existed in Rockland County, the exclusion orders on the lower school would not be lifted until the school achieved a 95% vaccination rate or forty-two days passed without any new cases ("Third Exclusion Order"). These Exclusion Orders formed the basis for Plaintiffs' initial complaint in this action, which was filed in federal court on March 6, 2019, and alleged various claims against RC DOH and Defendant Ruppert.

In March 2019, NY DOH reported that Rockland County had seen a total of 152 measles cases since the outbreak began in October, which included a rise in cases from the 116 cases that had been reported in January. On March 26, 2019, Defendant-Appellee Ed Day, Rockland County Executive, issued a Local State of Emergency Declaration (the "Emergency Declaration" or the "Declaration"), barring unvaccinated children under the age of eighteen, except for those with a medical exemption or documented serological immunity, from places of public assembly, including schools. The Declaration provided that:

> From 12:01 a.m. March 27, 2019 to 11:59 p.m. on April 25, 2019, no parent or guardian of a minor or infant under the age of 18, shall

7

cause, allow, permit, or suffer a minor or infant under their supervision, to enter any place of public assembly in Rockland County, if that minor or infant is not vaccinated against measles for any reason other than being serologically immune to measles as documented by a physician, or prevented from receiving a measles vaccination for a medical reason documented by a physician, or because the infant is under the age of 6 months.

Joint App'x at JA-1648. At his deposition, Day testified that he issued the Declaration after Ruppert expressed concern regarding a possible rise in measles during the upcoming holiday season of Easter and Passover. Ruppert, however, testified that she "had no direct role" in the development of the Declaration. Joint App'x at JA-356.

On April 3, 2019, in an Article 78 proceeding before the Supreme Court, County of Rockland, and while the federal lawsuit was still pending, Plaintiffs sought a preliminary injunction ordering Rockland County to rescind the Emergency Declaration and Third Exclusion Order. *See* Order to Show Cause, *W.D. v. Cnty. of Rockland*, No. 31783/2019 (Sup. Ct. Rockland Cnty. Apr. 3, 2019), ECF No. 2. The court granted the motion on April 5, 2019. *W.D. v. Cnty. of Rockland*, 101 N.Y.S.3d 820, 824 (Sup. Ct. 2019). On April 19, 2019, the Second Department denied Rockland County's motion for leave to appeal and to stay enforcement of the Supreme Court's ruling. Decision & Order on Motion, *W.D. v.*

*Cnty. of Rockland*, No. 2019-03666 (N.Y. App. Div. 2d Dep't Apr. 19, 2019), ECF No. 45.

Later in April, Day and Ruppert lobbied New York legislators to repeal New York State's statutory religious exemption to the vaccine requirement for school children, which requires vaccination against measles. In support of the repeal, Day stated: "There's no such thing as a religious exception. The bottom line here is that in addition to the fear factor, we have, we have babies in ICU's. We've had a baby born with measles. When are we going to wake up and say, 'you know something, let's do the right thing here . . . .'" Joint App'x at JA-1724, JA-2195. Day also characterized "anti-vaxxers" as "loud, very vocal, also very ignorant." Joint App'x at JA-2186. The New York legislature passed a bill repealing all religious exemptions for vaccination on June 13, 2019. S. 2994A, 2019-2020 S., Reg. Sess. (N.Y. 2019). On September 25, 2019, Rockland County declared an end to the resurgence.

In their amended complaint in federal court, which added Day and the County as Defendants, as well as claims based on the Emergency Declaration, Plaintiffs alleged a violation of procedural due process, violation of the First Amendment Free Exercise Clause, violation of the Fourteenth Amendment Equal

Protection Clause, and violation of the right to publicly assemble under the First Amendment. Plaintiffs claimed that the Exclusion Orders and Emergency Declaration impermissibly targeted them based on their sincerely held religious beliefs. Following discovery, Defendants moved for summary judgment on all claims.

The district court granted Defendants' motion in full. *W.D. v. Rockland Cnty.*, 521 F. Supp. 3d 358, 371 (S.D.N.Y. 2021). As relevant to Plaintiffs' Free Exercise claim, the district court found that the Emergency Declaration prohibiting unvaccinated children, except those with a medical exemption, from assembly in certain public places was "subject to rational basis review because it [was] both facially neutral and generally applicable." *Id.* at 397. As to neutrality, the district court observed that the Declaration applied to all "children between six months and eighteen years old who were unvaccinated 'for *any* reason,' except those with documented medical reasons preventing vaccination or those deemed serologically immune." *Id.* at 398. Moreover, the Declaration applied equally to all types of gatherings and did not distinguish between religious and non-religious children. *Id.* at 398–400. The district court found no disputed facts as to discriminatory intent, despite Day's comments regarding "anti-vaxxers," because

those comments "d[id] not raise a triable issue of fact as to discriminatory intent because none of Day's statements are derogatory, nor do they indicate 'active hostility' towards religion." *Id.* at 400–01 (citation omitted).

The district court concluded that the Declaration was generally applicable because it "impose[d] identical burdens on religious and non-religious conduct" and observed that the Declaration applied to children other than those with religious affiliations, including those who were homeschooled or were not vaccinated for non-religious reasons. *Id.* at 402–03. Plaintiffs argued that because the Declaration provided only a medical exemption, it was underinclusive, and likely targeting religion, given that children who are unvaccinated for medical reasons are "just as likely" as children unvaccinated for religious reasons "to become infected and spread the virus" if permitted to gather in public places. *Id.* at 403. Rejecting Plaintiffs' argument, the court explained that "the medical exemption was created to control the measles outbreak by encouraging vaccination" of all those who could be vaccinated, "while protecting those who could not be inoculated for medical reasons." *Id.*

Applying rational basis review, the district court found that the Emergency Declaration was rationally related to Defendants' interest in controlling measles.

*Id.* at 406–07. Next, in the alternative, the district court evaluated the Declaration under strict scrutiny, finding that the interest in quelling the measles outbreak was compelling and that the Declaration was narrowly tailored in light of "Defendants' previous unsuccessful efforts, the medical data and their limited resources in March 2019." *Id.* at 407–08. Finally, the district court found that Plaintiffs' procedural due process claim, Equal Protection Clause claim, and freedom of assembly claim all failed. *Id.* at 381–96, 409–14. This appeal, which challenges the Exclusion Orders and Declaration, followed.

"We review a district court's grant of summary judgment *de novo*, construing the evidence in the light most favorable to the party opposing summary judgment and drawing all reasonable inferences in her favor." *Guan v. City of N.Y.*, 37 F.4th 797, 804 (2d Cir. 2022). Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

For the reasons explained below, we **VACATE** the district court's grant of summary judgment for Defendants as to the Free Exercise claim, **REVERSE** the district court's dismissal of Plaintiffs' claims, and **REMAND** for trial on the Free

Exercise claim and consideration of whether partial summary judgment is warranted on the remaining claims.

## DISCUSSION

Because there are factual issues relevant to whether the Emergency Declaration was neutral and generally applicable, the district court erred in granting summary judgment in favor of Defendants on Plaintiffs' claim that the Emergency Declaration violated their rights under the Free Exercise Clause. While a reasonable juror could conclude that Day's statements evinced religious animus, rendering the Declaration not neutral, a reasonable juror could also conclude the opposite. Similarly, there are disputes of fact regarding whether the Declaration, in practice, primarily affected children of religious objectors or whether there was a sizable population of children who were unvaccinated for a variety of non-medical and non-religious reasons. There are also disputes as to whether the County's purpose in issuing the Declaration was to stop the spread of measles or to encourage vaccination. Given these fact-intensive issues, the district court's grant of summary judgment on Plaintiffs' Free Exercise Claim was erroneous.[4]

---

[4] On appeal, Plaintiffs challenge the district court's decision in its entirety. Because we find that the district court's dismissal of Plaintiffs' Free Exercise claim was

The Free Exercise Clause protects "the ability of those who hold religious beliefs of all kinds to live out their faiths in daily life through 'the performance of (or abstention from) physical acts.'" *Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407, 2421 (2022) (quoting *Emp. Div., Dep't of Hum. Res. of Or. v. Smith*, 494 U.S. 872, 877 (1990)). However, "the right of free exercise does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes)." *Smith*, 494 U.S. at 879 (citation and internal quotation marks omitted). Where a law is both neutral and generally applicable, rational basis review applies. *See Kane v. de Blasio*, 19 F.4th 152, 166 (2d Cir. 2021). On the other hand, where a law is not neutral or generally applicable, "this Court will find a First Amendment violation unless the government can satisfy 'strict scrutiny' by demonstrating its course was justified by a compelling state interest and was narrowly tailored in pursuit of that interest." *Kennedy*, 142 S. Ct. at 2422 (quoting *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 546 (1993)). We address neutrality and general applicability in turn.

---

erroneous, we reverse as to that claim, vacate the district court's grant of summary judgment as a whole, and remand for consideration of whether partial summary judgment is justified on the remaining claims.

## I.  Neutrality

"[I]f the object of a law is to infringe upon or restrict practices because of their religious motivation, the law is not neutral."  *Lukumi*, 508 U.S. at 533.  "To determine the object of a law, we must begin with its text, for the minimum requirement of neutrality is that a law not discriminate on its face."  *Id.*  We find that the Declaration is facially neutral in that it applies to all unvaccinated children, but for two limited exceptions, in prohibiting them from entering a place of public assembly.  *See We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 281 (2d Cir. 2021) (finding a rule facially neutral because it applied to "all 'personnel,' . . . aside from those who qualify for the narrowly framed medical exemption").  However, "[o]fficial action that targets religious conduct for distinctive treatment cannot be shielded by mere compliance with the requirement of facial neutrality."  *Lukumi*, 508 U.S. at 534.

We therefore consider whether the Declaration "had as [its] object the suppression of religion" by assessing factors including, "the historical background of the decision under challenge, the specific series of events leading to the enactment or official policy in question, and the legislative or administrative history, including contemporaneous statements made by members of the

15

decisionmaking body." *Id.* at 540; *see also Masterpiece Cakeshop, Ltd. v. Colo. C.R. Comm'n*, 138 S. Ct. 1719, 1731 (2018) (quoting *Lukumi*, 508 U.S. at 540). "Government fails to act neutrally when it proceeds in a manner intolerant of religious beliefs or restricts practices because of their religious nature." *Fulton v. City of Phila.*, 141 S. Ct. 1868, 1877 (2021).

Plaintiffs argue that the object of the Declaration was to burden the exercise of their religious beliefs because Day and Ruppert acted with discriminatory intent, evinced by Day's statements made between April and June 2019. Defendants respond that the statements do not illustrate discriminatory intent because they were made several weeks after the Declaration was rescinded and in a different context.

Given the fact-intensive nature of this inquiry, Defendants have not met the high bar required to prevail at the summary-judgment stage. Contrary to the district court's holding, we conclude that a reasonable juror *could* find that Defendants acted with religious animus. Notably, Day testified that he issued the Declaration after Ruppert expressed concern over a rise in measles cases during the Easter and Passover holidays. Moreover, in connection with his lobbying for the repeal of a religious exemption to vaccination, Day commented that "[t]here's

16

no such thing as a religious exception" and characterized "anti-vaxxers" as "very ignorant."  Joint App'x at JA-1724.[5]  Based on these facts, a reasonable juror could find the Declaration was designed "to target religious objectors to the vaccine requirement *because of* their religious beliefs."  *We The Patriots*, 17 F.4th at 284.  As the Supreme Court has recognized, the government "cannot act in a manner that passes judgment upon or presupposes the illegitimacy of religious beliefs and practices."  *Masterpiece Cakeshop*, 138 S. Ct. at 1731.

Assessing the relevance of statements by public officials to the question of religious animus is often context specific.  In *We The Patriots*, this Court held that statements made by Governor Kathy Hochul at a press conference, including that her "'personal opinion' [was] that no religious exemption is required" and "that she was 'not aware of' any 'sanctioned religious exemption from any organized religion,'" did not evince religious animosity in connection with a vaccine requirement for healthcare workers that did not provide a religious exemption.  17 F.4th at 283–84.  Unlike here, however, Governor Hochul did not actually issue the vaccination rule, *see id.* at 274 (the rule "was issued by the State's Public Health

---

[5] At oral argument, Defendants' counsel reiterated Day's sentiments, referring to Plaintiffs' "so-called religious beliefs."  Arg. 22:21–25.

and Health Planning Council, a group of 25 healthcare professionals, including the Commissioner of Health"), and her statements merely appeared to express "the State's litigation position" and "the fact . . . that many religious leaders have stated that vaccination is consistent with their faiths," *id.* at 283-84. Ultimately, given that it was Day himself who issued the Declaration and indicated that the religious holidays were a factor in doing so, and that Day later made derogatory comments about "anti-vaxxers," which may include religious objectors, the evidence could support a finding of discriminatory intent.

On the other hand, a juror *could* find that there is no evidence of religious animus. Although Day stated that he issued the Declaration after Ruppert expressed concern regarding measles cases during the religious holidays, a juror could also credit Ruppert's testimony that she had no direct role in developing the Declaration. Additionally, Day's remaining statements postdated the Declaration and were made in connection with repealing the religious exemption, not issuing the Declaration. *Cf. Masterpiece Cakeshop*, 138 S. Ct. at 1729–30 (finding contemporaneous statements were evidence of religious animus). A reasonable juror could conclude that while Day's statements were "insensitive," *see W.D.*, 521 F. Supp. 3d at 401, he was merely expressing a concern for the community's health,

18

not a hostility towards religion. At bottom, this presents the sort of close factual question that should be left to the jury. The district court erred in holding otherwise.

## II. General Applicability

The general applicability requirement prohibits the government from "in a selective manner impos[ing] burdens only on conduct motivated by religious belief." *Lukumi*, 508 U.S. at 543. "A law . . . lacks general applicability if it prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way." *Fulton*, 141 S. Ct. at 1877; *see Cent. Rabbinical Cong. of the U.S. & Can. v. N.Y.C. Dep't of Health & Mental Hygiene*, 763 F.3d 183, 197 (2d Cir. 2014) ("A law is therefore not generally applicable if it is substantially underinclusive such that it regulates religious conduct while failing to regulate secular conduct that is at least as harmful to the legitimate government interests purportedly justifying it."). "[W]hether two activities are comparable for purposes of the Free Exercise Clause must be judged against the asserted government interest that justifies the regulation at issue," and "[c]omparability is concerned with the risks various activities pose." *We The Patriots*, 17 F.4th at 285 (quoting *Tandon v. Newsom*, 141 S. Ct. 1294, 1296 (2021)).

19

Plaintiffs argue that the Declaration is not generally applicable because the medical exemption permits those who are unvaccinated for non-religious reasons to assemble in public places. Plaintiffs characterize unvaccinated children who are subject to the Declaration as falling into two groups—children with medical exemptions and the children of religious objectors—with only the latter being prohibited from public gatherings. Defendants counter that the Declaration applied to multiple categories of non-religious, unvaccinated children, affecting them to the same extent as Plaintiffs' children.

Given the underdeveloped record, Defendants have failed to meet the burden needed to prevail without trial on this issue. In finding the Declaration generally applicable, the district court accepted the assertion that the Declaration prohibited children other than those of religious objectors from public assembly. *See W.D.*, 521 F. Supp. 3d at 402. However, based on the record before us, we cannot determine whether the Declaration affected only the two groups identified by Plaintiffs or affected the other groups posited by the district court, such as homeschooled students or those who objected to vaccination on philosophical

grounds.[6]  Much like the question of religious animus, the question of who was actually affected by the Declaration should be put before the factfinder.

Additionally, there is a dispute regarding what governmental interest the Declaration was intended to serve, which is relevant to the question of whether the Declaration was "substantially underinclusive," and therefore, not generally applicable.  *See We The Patriots*, 17 F.4th at 284–85.  Rockland County's interest in issuing the Declaration could be to stop the transmission of measles, which might lead a factfinder to question why there was a medical exemption, where, as Plaintiffs point out, medically exempt children "are every bit as likely to carry undetected measles [as] a child with a religious exemption and are much more vulnerable to the spread of the disease and serious health effects if they contract it." Appellants' Br. at 56.

On the other hand, as advocated by Defendants, the purpose of the Declaration could be to encourage vaccination.  If this is the purpose, then the Declaration could be viewed as a reasonable method for doing so.  The language of the Declaration itself, however, does little to resolve this issue, stating both that

---

[6] The district court's citations to bolster this fact—which are to Defendants' memoranda of law, *see W.D.*, 521 F. Supp. 3d at 402—provide little factual support.

"[i]t has been found that a meaningful portion of the County's residents are not vaccinated against the measles, which permits the outbreak to continue," and that the Declaration must be issued to "protect the infants, infirm, and ill of this County who are unable to be vaccinated against the measles or who are immunocompromised."  Joint App'x at JA-1647.  This is another fact-intensive question that should be explored at trial through the examination of evidence that supports or undermines the two suggested purposes, including whether there is any evidence to suggest that the County's stated purpose is pretextual.  *See We The Patriots*, 17 F.4th at 285.

In sum, because factual questions about the Emergency Declaration pervade the issues of neutrality and general applicability, the question of what level of scrutiny applies cannot be resolved on summary judgment, and Defendants fail to meet the high burden required to prevail at this stage.  Therefore, the district court's grant of summary judgment for Defendants on Plaintiffs' Free Exercise claim was in error.

## CONCLUSION

For the reasons set forth above, we **VACATE** in part as to the grant of summary judgment on the Free Exercise claim, **REVERSE** the district court's

22

dismissal of Plaintiffs' claims, and **REMAND** for trial on the Free Exercise claim

and for consideration of whether partial summary judgment for the Defendants is

warranted on the remaining claims.

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

23