21-551-cv
*M.A. v. Rockland Cnty. Dep't of Health*

PARK, *Circuit Judge*, concurring:

In the spring of 2019, Rockland County quarantined children who were unvaccinated for measles for religious reasons—prohibiting them from entering any public place—but not children who were unvaccinated with medical exemptions. County officials did not even try to hide their reasons for engaging in this "religious gerrymander[ing]," which served to isolate, target, and burden Plaintiffs' religious practices.[1] *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 534 (1993) (citation omitted). To them, Plaintiffs were "anti-vaxxers" who were "loud, very vocal, [and] also very ignorant." Special App'x at SA-12. "There's no such thing as a religious exemption," they said, and Plaintiffs—all of whom received valid exemptions from the State of New York—held beliefs that "were debunked years ago." *Id.* at SA-13. The officials' justification for the mass quarantine was based on their concerns about the spread of measles during the "Easter and Passover

---

[1] At first, the County's temporary orders of exclusion—which included neither medical nor religious exemptions—targeted only schools that actually had measles cases. But the First Exclusion Order relied on supposed "mapping technology" to select schools that had no connection to the outbreak other than proximity and vaccination rates below 70%. Special App'x at SA-7. These criteria necessarily targeted nearby schools with high numbers of religious objectors, especially in the Hasidic community. *Cf. Agudath Isr. of Am. v. Cuomo*, 983 F.3d 620, 624 (2d Cir. 2020) (Governor segmenting population into "zones" with varying religious constituencies). And once vaccination rates increased in those schools, officials simply moved the goalposts, requiring higher percentage thresholds. After this sort of targeting was no longer possible (because the County imposed a broad-based, County-wide order via the Emergency Declaration), the County included a medical exemption, while students with religious objections were still subject to the mandate.

holidays." *Id.* at SA-12. Even at oral argument before this Court, Defendants' counsel questioned Plaintiffs' "so-called religious beliefs." Oral Arg. Tr. at 22:10.

I agree with the majority that the district court erred by granting summary judgment for Defendants and by dismissing Plaintiffs' claims. Plaintiffs did not move for summary judgment, so we are not presented today with the question whether they would have prevailed if they had done so. The majority refrains from applying *Employment Division v. Smith*, 494 U.S. 872 (1990), finding close factual issues to be resolved at trial. But in my view, a straightforward application of *Smith* to facts not in dispute shows that the Emergency Declaration was neither neutral nor generally applicable.

The Emergency Declaration was not neutral because its "object" was to burden Plaintiffs' choices "at least in part because of their religious character." *Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407, 2422 (2022) (citation omitted). A review of the "historical background," "contemporaneous statements made by members of the decisionmaking body," and the "specific series of events leading to the enactment" of the Emergency Declaration reveals its discriminatory object. *Lukumi*, 508 U.S. at 540. County Executive Day publicly defended the Declaration as an effort to address the risk of rising measles cases during religious holidays, and he made numerous disparaging comments about religious objectors as part of his effort to repeal the religious exemption from the statewide vaccine mandate. *See* Maj. Op. at 16–17.

Moreover, the Emergency Declaration was not generally applicable because, by allowing a medical exemption, it "prohibit[ed]

religious conduct while permitting secular conduct that undermine[d] the government's asserted interests in a similar way." *Fulton v. City of Phila.*, 141 S. Ct. 1868, 1877 (2021); *see also Tandon v. Newsom*, 141 S. Ct. 1294, 1296 (2021) ("Comparability is concerned with the risks various activities pose, not the reasons" for them.). The County even conceded at oral argument that children who were medically exempted from the mandate were given free rein throughout the County, even though they posed identical risks to the public as children seeking a religious exemption.

The Emergency Declaration was neither neutral nor generally applicable and should thus be subject to strict scrutiny under *Smith.* The district court erred by applying rational-basis review in the first instance. *See Lukumi*, 508 U.S. at 546.

Although the district court applied strict scrutiny in the alternative, it improperly deferred to the "Defendants' authority as elected representatives to use their best judgment." Special App'x at SA-62. Courts "may not defer" to the executive on constitutional questions "simply because he is addressing a matter involving science or public health." *Agudath Isr. of Am. v. Cuomo*, 983 F.3d 620, 635 (2d Cir. 2020); *see Lukumi*, 508 U.S. at 546 (noting that strict scrutiny should not be "watered . . . down but really means what it says" (cleaned up)).

The majority opinion does not address whether the record already supports a conclusion that the Emergency Declaration fails strict scrutiny and *Plaintiffs* would thus be entitled to summary judgment. On that understanding, I join the majority in vacating the grant of summary judgment for Defendants and remanding for trial on Plaintiffs' free-exercise claim.

I note two additional points.   First, during the events at issue in this case, New York amended its school-vaccination requirements to eliminate the state's religious exemption altogether—while still allowing medically exempt students to enter school classrooms.   *See* 2019 N.Y. Laws ch. 35, § 1 (repealing N.Y. Pub. Health Law § 2164(9)).   Indeed, Defendants made their derogatory comments about Plaintiffs' religious beliefs while lobbying New York state legislators to repeal the religious exemption (after enforcement of the Emergency Declaration had been enjoined[2]).   New York's school-vaccination laws are now an extreme outlier.[3]   We have not yet had occasion to review the constitutionality of New York's new regime.[4]

Second, this case highlights the difficulty of applying *Smith*. General applicability turns on whether an exception "undermines the purposes of the law" at issue or "undermines the government's asserted interests in a similar way" that a requested religious exemption would.   *Blackhawk v. Pennsylvania*, 381 F.3d 202, 209 (3d

---

[2]   *See W.D. v. Cnty. of Rockland*, 101 N.Y.S.3d 820 (Sup. Ct. 2019).

[3]   *See States with Religious and Philosophical Exemptions from School Immunization Requirements*, Nat'l Conf. St. Legislatures (May 25, 2022), https://www.ncsl.org/research/health/school-immunization-exemption-state-laws.aspx (listing only six states with neither religious nor personal-belief exemptions, three of which repealed such exceptions within the last few years).

[4]   In accordance with *Smith*, we said that "New York could constitutionally require that all children be vaccinated in order to attend public school" and that the state "goes beyond what the Constitution requires by allowing an exemption for parents with genuine and sincere religious beliefs."   *Phillips v. City of N.Y.*, 775 F.3d 538, 543 (2d Cir. 2015). But we have never said that allowing *some* unvaccinated students (*i.e.*, those with medical exemptions) to mingle with their peers in schools, while excluding religious objectors, would be constitutional.

4

Cir. 2004) (Alito, J.); *Fulton*, 141 S. Ct. at 1877. But laws can have various purposes and advance various interests. The Emergency Declaration, for example, could be viewed as an effort aimed narrowly at preventing the spread of measles, broadly at promoting public health, or something in between at both stopping the spread and "encouraging vaccination of all those for whom it was medically possible." Special App'x at SA-52. The more narrowly a law's purpose is construed, the more difficult it is for an exception to undercut it—at a granular enough level, the purpose of any law is simply to "appl[y] to everything it applies to." Douglas Laycock & Steven T. Collis, *Generally Applicable Law and the Free Exercise of Religion*, 95 Neb. L. Rev. 1, 16 (2016). Conversely, a law's purpose could be framed broadly—for example, "to promote public health"— so that an exception would rarely undermine it. *See Does 1–3 v. Mills*, 142 S. Ct. 17, 20 (2021) (Gorsuch, J., dissenting from denial of application for injunctive relief) ("[A]n error this Court has long warned against [is] restating the State's interests . . . at an artificially high level of generality.").

In short, the general-applicability test embraces a purposivist approach that is vulnerable to manipulation and arbitrariness. And although the inquiry is highly malleable, the consequences are entirely inflexible: Pass the test and the law faces only rational-basis review; fail, and it is subject to strict scrutiny. *See Fulton*, 141 S. Ct. at 1876. At least with ordinary analysis under the tiers of scrutiny, constitutional burdens can be weighed against the government's interests as a whole. But with *Smith*, the inquiry is all-or-nothing— an exception either undermines a law's particular, overriding "purpose," or it does not. *See id.*

Unlike recent cases arising from governmental responses to the COVID-19 pandemic, this appeal comes to us free from the exigencies of emergency motion practice and with the benefit of a summary-judgment record.   The majority's careful opinion rightly holds based on the record below that the district court's grant of summary judgment for Defendants was in error.   But courts will continue to struggle in cases raising similar issues in emergency proceedings when timeframes are short, records are undeveloped, and the science is uncertain.   Until *Smith* is overruled, its ill-defined test means that free-exercise rights risk being perennially trumped by "the next crisis."   *Dr. A v. Hochul*, 142 S. Ct. 2569, 2571 (2022) (Thomas, *J.*, dissenting from denial of certiorari).   For today at least, our Court has not fallen into that trap, and I join its opinion in full.

A True Copy

Catherine O'Hagan Wolfe, Clerk

United States Court of Appeals, Second Circuit

6